# SUPREME COURT,

## STATE OF KANSAS.

# JANUARY TERM, 1883.

### PRESENT:

Hon. ALBERT H. HORTON, Chief Justice.
Hon. DANIEL M. VALENTINE, } Associate Justices.
Hon. DAVID J. BREWER, }

---

## WILLIAM F. TURNER, et al., v. WILLIAM E. OTIS.

1. PARTNERSHIP; *Dissolution; Settlement, When not Set Aside.* Where, after a dissolution between partners, and a settlement and division of the property, one partner brings an action to set aside the settlement on the ground that it was obtained by deceit, misrepresentation, threats and fear, and upon the trial it is found that there was misrepresentation and deceit as to some matters, it does not follow that the entire settlement must be set aside and a new accounting ordered. If the misrepresentation is only as to some minor matter, and the settlement as a whole does not appear to have been fraudulently made, the court may simply correct the particular wrong and leave the settlement otherwise undisturbed. Each case must be determined on its own merits, and no arbitrary rule can be laid down. In the case at bar, *held, first,* that it cannot be adjudged that the findings of the court are against the evidence; or, *second,* that upon the facts as found the court erred in not setting aside the entire settlement and ordering a general accounting.

2. INTEREST, *When.* Where a settlement is corrected by charging the defendant with a certain amount which he had wrongfully collected and withheld, such amount should carry interest from the time of collection.

### Error from Montgomery District Court.

ACTION brought by *Turner* and wife against *Otis,* to set aside a certain settlement and dissolution of the copartner-

ship between the parties. The opinion contains a sufficient statement of the facts. The plaintiffs allege that the court, at the March Term, 1881, erred in not opening up the whole settlement and ordering a general accounting, and bring the case to this court.

*Geo. & Jos. Chandler*, for plaintiffs in error.

*R. J. Hill*, and *J. D. McCue*, for defendant in error.

The opinion of the court was delivered by

BREWER, J.: This was an action brought by plaintiffs in error, plaintiffs below, to set aside a settlement. The facts are these: On October 14, 1873, the plaintiffs and defendant entered into a partnership for the transaction of a banking business. The agreement therefor was in writing. By its terms the partnership was to continue three years. At the expiration of three years, by further agreement, the partnership was continued for another term of three years, which would carry it to October 14, 1879. On October 9, 1878, the parties entered into a written agreement for the dissolution of the partnership, and the division of the property. On July 25, 1879, more than nine months thereafter, this petition was filed, alleging that such dissolution was accomplished by fraud and deceit, and through threats and fear, and praying that therefore it should be declared null and void, and a receiver appointed to take possession of all the partnership property and wind up the business. By the terms of the original agreement Mrs. Turner was to put into the business $10,000, ($6,000 in cash and $4,000 in mortgage notes,) and the defendant $3,000, ($1,000 in mortgage notes and the rest in cash or mortgage notes,) as soon as he was able to sell certain real estate. The defendant was to act as the cashier, the plaintiff, W. F. Turner, was to have a general supervision and oversight of the business, and to represent his wife in the affairs of the bank, he himself putting in no money. She was therefore in effect only a silent partner, and in fact gave no personal attention to the busi-

ness.    The business was prosperous, and everything seems to
have passed along smoothly and satisfactorily during the first
term of three years.    During the second term business was
not so prosperous, and dissatisfaction and complaint arose.
About the first of September, 1878, defendant insisted on a
dissolution and a division of the property.    This was re-
sisted by the plaintiffs.    Propositions were made and declined,
some harsh words passed between the parties, the matter
dragged along till October 9, when the agreement com-
plained of was signed.    The case was tried by the court
without a jury, the decision was substantially against the
claim of fraud, deceit, threats and fears ; but upon the testi-
mony the court opened up the settlement so far as to correct
two mistakes, and for the amounts thereof, together with a
certain sum it found due under the dissolution agreement,
rendered a judgment against the defendant.    Whether under
the pleadings such a judgment against the defendant was
strictly proper, we need not determine, for the defendant is
not complaining.    The plaintiffs are the parties complaining,
and they allege that the court erred in not opening up the
whole settlement and ordering a general accounting.    Coun-
sel for plaintiffs in error in their brief say :

    " The court below found for the plaintiffs, setting aside the
' articles of dissolution and settlement entered into between
the plaintiffs and said defendant dissolving the copartner-
ship.'    Why?    Because the same was obtained by the de-
fendant by fraud, misrepresentation, false representation,
concealment, cunning device, or unjust and undue advantage,
as alleged in the petition.    Finding this, why should a gen-
eral accounting not be ordered instead of a special one?"

    We do not understand the decision of the court to imply
what counsel claim.    The language of the decision is as fol-
lows :

    " The court, being fully advised in the premises herein,
doth find the issues herein in favor of the plaintiffs, to this
extent and no further, viz.: First, the court finds for the
plaintiffs, sets aside the articles of dissolution and settlement
entered into between the plaintiffs and said defendant, dis-

solving the copartnership heretofore existing between said plaintiffs and said defendant; settlement mentioned in the plaintiffs' petition, (a copy of which is hereto attached.) Second, the court, taking and making an accounting between said plaintiffs and said defendant in said copartnership, sets aside the settlement set out and mentioned in said articles of dissolution to this extent: it sets aside said settlement as to the Brock judgment set out in said article," etc.

Now we think this means that the court finds against the plaintiffs on the general charge of wrong, but that as to these two particular matters the settlement was unjust, and ought not to stand. Of course this excludes the idea of threats or fear, and at the most it is a finding that as to these two matters there was a mistake, misrepresentation, or deceit. Conceding that it is a finding as to them of misrepresentation and deceit, does it follow that the whole settlement should be set aside and a general accounting ordered? We think not. The rule is thus stated in 1 Story's Eq. Jurisp., §523:

"In some cases, as of gross fraud, or gross mistake, or undue advantage, or imposition, made palpable to the court, it will direct the whole account to be opened, and taken *de novo*. In other cases, where the mistake or omission, or inaccuracy, or fraud, or imposition, is not shown to affect or stain all the items of the transaction, the court will content itself with a more moderate exercise of its authority. It will allow the account to stand, with liberty to the plaintiff to surcharge and falsify it; the effect of which is to leave the account in full force and vigor as a stated account, except so far as it can be impugned by the opposing party, who has the burden of proof on him to establish errors and mistakes. Sometimes, still a more moderate course is adopted, and the account is simply open to contestation, as to one or more items which are specially set forth in the bill of the plaintiff as being erroneous or unjustifiable; and in all other respects it is treated as conclusive."

See also 1 Daniell's Chancery Pl. & Pr., 667; Collyer on Partnership, §§372 and 373, and notes; *Gage v. Parmalee*, 87 Ill. 329. This is in accord with the general principles of equity, which, hampered by no arbitrary rules, aims in every given case to do that which under all the facts and circum-

stances shall be fair and right. Of course it is very clear that to open up an entire settlement between partners on account of a mere mistake in the statement of account, would often work great injustice. The easiest and simplest way, (that of correcting the mistake, leaving all the rest to stand,) would generally be the fairest and most just.

Where there is misrepresentation and fraud, the case is not so clear. It may be urged, and with force, that a party who has, even in a small matter, knowingly misrepresented the facts and deceived his partner, ought to take nothing from any part of the settlement, although in nothing else was he guilty of any wrong; that the slightest fraud in the transaction taints and vitiates it wholly—compels its entire rejection and a restatement and readjustment on the basis of exact truth. Of course one who has been guilty of fraud or deceit has no claim upon the consideration of the court; but to make it an arbitrary rule that the presence of any fraud vitiates the entire settlement and compels its total rejection, will sometimes make the punishment out of all proportion to the offense, and in fact do more injustice than even permitting the fraudulent account and settlement to stand. It will be observed that this settlement, as very frequently happens in settlements between partners, implies and disposes of three matters: it implies the truth of the past business transactions of the partnership, with its results stated in the present assets and liabilities; it divides the properties, and it provides for the payment of the liabilities. If one partner by the settlement assumes the liabilities and takes certain properties for the purpose of paying, and in fact pays them, it would be impossible thereafter, in opening up the settlement, to place the partners back where they were at the time of the settlement; and then to set it aside entirely and to make a settlement *de novo*, would oftentimes work great injustice. Generally, too, the settlement of a partnership business in the court is a matter of labor and expense, and this must always be taken into consideration in determining whether justice requires a general opening of the account.

In short, the inquiry in each case should be: What is right and fair between the parties? No wrong conduct should be profitable to the wrong-doer, but no wrong should be punished beyond its deserts.

Turning now to the case before us, does the fact of a mistake, or even of misrepresentation, fraud and deceit as to the two matters named, compel a setting aside of the whole settlement? Can we say as a matter of law that the court, on account of these matters, should have opened up the entire settlement? The settlement, in a general way, between the parties, was this: Otis took —

| | |
|---|---|
| The bank buildings and fixtures, valued at... ............ ..... | $3,000 00 |
| Good notes........................................................................ | 7,526 24 |
| Cash, and cash items......................................................... | 5,128 96 |
| School-district orders........................................................ | 4,492 40 |
| Total....................................................................... | $20,147 60 |
| And assumed the payment of the deposits............................. | $11,610 00 |
| Outstanding notes ............................................................. | 8,000 00 |
| Sundry debts.................................................................... | 537 60 |
| Total........................................................................ | $20,147 60 |

Besides this, there remained as assets two mill properties, some unimproved lands, judgments, and slow and bad notes. The Turners took the two mills, which were valued in a statement furnished shortly prior to the settlement at $21,-350.30, cash $500, a little over $7,000 in judgments and notes, and assumed a liability of about $2,000. Otis took the unimproved lands and a little over $11,000 in judgments, slow and bad notes. There were some other minor matters included in the dissolution agreement, but these are the substantial features. Now the two matters in which the court corrected the settlement amounted to $362. Immediately after the settlement, Otis, taking possession of the properties assigned to him, proceeded to discharge the indebtedness, and at the time of the trial had paid the entire amount assumed by him. This suit was not commenced until more than nine months after the settlement. The misrepresentation and wrong of the defendant, even taking the plaintiffs' version of the matter, were not attended by cir-

cumstances of great aggravation. Further, there was on the part of the plaintiffs no little negligence and carelessness, a matter of which we shall have to speak more at length hereafter. We think, therefore, that it was more fair and just for the court to correct these two wrongs, as it did by a judgment for their amount, than to set aside the whole settlement, ignoring what had been done by Otis in reliance upon it, and ordering a new accounting and winding-up of the partnership by a receiver.

But it is urged by counsel that the testimony shows much more aggravated and serious wrongs perpetrated by the defendant upon the plaintiffs than those found by the court. It is insisted that the dissolution and settlement was obtained by threats and under fear of financial ruin, and that the misrepresentations were largely in excess of those found by the court, and that the affairs of the partnership had not been managed by Otis in good faith and with due regard of the interest of his partners. The testimony is voluminous, the record extending over two hundred pages, and it would be a useless labor for us to follow counsel in their very careful and critical review of its different features; but there are some general observations which it is proper for us to make. In the first place, the testimony is conflicting. The two principal witnesses are Mr. Turner and the defendant. So far as they disagree, the finding of the court must be taken as sustaining the testimony of Otis, and we must assume the facts to be as he testifies. This disposes of a great many questions that are discussed by counsel. They argue, for instance, that Otis forced the dissolution by threats of crushing his partners, ruining the business, withdrawing the funds from the bank, and mortgaging the real estate. It is true that Otis talked of refusing to receive any more deposits, of taking the money in the bank and paying the depositors, and of mortgaging his half-interest in the realty to the two principal creditors of the bank; but he denies making any general threats of crushing or ruining, and that he only said that he would pay the depositors and mortgage

his interest, after and in reply to a threat of plaintiffs to have a receiver appointed. In other words, he claims that he simply intended, and said, that if the plaintiffs were going to law, he would have the debts paid and secured, as far as possible, before a receiver got possession. But we are not very much impressed with the force of plaintiffs' claim, founded upon their version even, of the threats. Mr. Turner, the managing one of the plaintiffs, was a lawyer, a man of years and experience, one who knew his legal rights, and that, if defendant had done, or was likely to do, any wrong to the partnership or its business, his possession could be at once taken away by a receiver, and he restrained by injunction. The case of the plaintiffs would be much stronger if, immediately after defendant's conduct, so wrongful, as they claim, they had at once applied for a receiver instead of waiting until he had closed up the partnership indebtedness.

Again, the talk of dissolution commenced about the first of September. Negotiations were pending up to the 9th of October. Statements of assets and accounts, including these matters in respect to which the court finds there was wrong as well as those of which the plaintiffs are now complaining, were furnished early in September. The plaintiffs were both residents of Independence. There was not only nothing to hinder them from examining the books and ascertaining the exact facts, but also they were requested by Otis to come and examine. Common prudence, ordinary care, cast on them the duty of examination. The obligations of a partnership do not rest wholly on one partner. In preparing for a settlement, each should advise himself of the facts. Neither has a right to say in complaint of a settlement that he relied wholly upon the other and was deceived.

Again, as to several of the matters of which counsel speak, such as room rent of the defendant, attorney's fees of one of the plaintiffs, interest, etc., they were known and talked of at the time of the settlement. Hence it is entirely immaterial now whether they ought or ought not to have been allowed. The fact of the settlement implies concessions on

each side, and an adjustment of conflicting claims; and when parties act with full knowledge they are concluded by the agreements they reach.

Finally, we remark that while the active management of the bank was in the hands of the defendant, yet there was no exclusion of the plaintiffs, or either of them, from knowledge of or participation in the business. The partnership contract provided for a general supervision and oversight by the plaintiff, Mr. Turner, and it is not pretended that this was ever denied or questioned. So far as he voluntarily omitted it, or gave his time to other matters, the plaintiffs certainly have no cause of complaint.

After giving the record a very careful examination, we do not feel justified in holding that the district court erred in its conclusions.

Complaint is made of the ruling of the court upon three questions put to the witness, William F. Turner. These questions are:

"1. How much were the mills worth that you took in this pretended settlement? 2. How much did you lose, if anything, by the dissolution in the shape it was made? 3. How much advantage has Otis gained over the plaintiffs, in property or money, by that pretended settlement?"

The court refused to permit the witness to answer any of these questions. We think the ruling of the court was correct, though perhaps the grounds of objection in each case were not well taken. As to the last two questions, the answer sought was simply the opinion of the witness — a sort of a general summing-up of the case on the plaintiffs' side; but this is clearly inadmissible. It was for the witness to state, in detail, the facts, and then for the court to determine whether the plaintiffs had lost anything, or any advantage was gained over them. So, that on general principles, we think these questions were rightly ruled out. As to the first question, doubtless an answer might have been properly received, though we cannot think that ruling it out was such a material error as to compel a reversal of the

judgment. It does not appear that there was any ignorance or concealment of the value of this property at the time of the settlement, or any mistake or deception as to the amount of money the firm had invested in it. Each party was as well informed as the other, and while evidence of its value would have been proper, and probably ought to have been admitted, yet we do not think its rejection of itself sufficiently material to justify a reversal of the judgment.

One other matter requires mention. Counsel insist that the court should have allowed interest on the amounts charged against the defendant, as wrongfully obtained by him from the time he collected them. We think this claim is correct, and that interest should be added from at least the time of the commencement of the suit (the exact day of collection being uncertain) to the day of the trial. The judgment will therefore be modified by adding to it $42.24, interest on the two sums, in respect to which the court sets aside the settlement from the time of commencing the suit to the date of judgment, March 26, 1881. In other respects the judgment will be affirmed. The costs of this court will be divided between the parties.

All the Justices concurring.