FIRST NATIONAL BANK OF SHAKOPEE v. H. BURTON STRAIT, Administrator.[1]

January 6, 1898.

Nos. 10,746—(151).

**Statute of Limitations — Discovery of Fraud — G. S. 1894, § 5136, subd. 6.**

In this case it was sought to postpone the running of the statute of limitations on the ground of the fraud of the defendant, which was not discovered by the plaintiff until within six years. G. S. 1894, § 5136, subd. 6. *Held*, that the evidence would have justified the jury in finding that the failure of the plaintiff sooner to discover the facts constituting the alleged fraud was inconsistent with the exercise of reasonable diligence, and was the result of the plaintiff's own negligence.

**Payment—Pleading and Proof—Partnership—Bank.**

Under a special plea of payment of the note of a co-partnership to a bank by the deposit of money, which the bank received and accepted in payment, evidence that the bank accepted in payment the individual note of one of the members of the firm is inadmissible.

Appeal by plaintiff from an order of the district court for Scott county, Cadwell, J., denying its motion for a new trial after a verdict for defendant. Reversed.

*Charles G. Hinds* and *Henry Hinds*, for appellant.

Under G. S. 1894, § 5136, subd. 6, providing that in an action for relief on the ground of fraud the cause of action does not accrue until the discovery of the fraud, it is necessary that the fraud be

[1] Reported in 73 N. W. 645.

actually discovered. The discovery contemplated by this statute is an actual discovery, not a constructive discovery. Berkey v. Judd, 22 Minn. at p. 299; O'Dell v. Burnham, 61 Wis. 562; McMahon v. McGraw, 26 Wis. 614; Wilder v. Secor, 72 Iowa, 161; Cock v. Van Etten, 12 Minn. 431 (522); Board v. Smith, 22 Minn. 97; Humphrey v. Carpenter, 39 Minn. 115; Lewis v. Welch, 47 Minn. 193, 203. Even where the statute is qualified by the words: "Or might with the use of reasonable diligence have been discovered," the failure to use such diligence may be excused where there exists a relation of trust and convenience between the parties. Gillett v. Wiley, 126 Ill. 310. "Discovery" implies knowledge and is not satisfied by mere suspicion of wrong. Marbourg v. McCormick, 23 Kan. 38; Parker v. Kuhn, 21 Neb. 413. Payment is an affirmative defense and must be pleaded. Allegation of nonpayment in the complaint is not put in issue by a general denial. No general defense of payment is here pleaded, and the evidence offered and received is not proof of the special matter pleaded as payment and has no relation to that plea.

*Southworth & Coller, E. Southworth & Son,* and *Warner, Richardson & Lawrence,* for respondent.

The claim was barred by the statute of limitations. 13 Am. & Eng. Enc. 729; Wilmerding v. Russ, 33 Conn. 67; Fleming v. Culbert, 46 Pa. St. 498; Brown v. Edes, 37 Me. 318; Sankey v. McElevey, 104 Pa. St. 265; Churchman v. City, 110 Ind. 259; Wynne v. Cornelison, 52 Ind. 312; Walker v. Soule, 138 Mass. 570; Farnam v. Brooks, 9 Pick. 212; Nudd v. Hamblin, 8 Allen, 130; Marcotte v. Hartman, 46 Minn. 203; Ashurst's App. 60 Pa. St. 290; Pratt v. Northam, 5 Mason, 95. The doctrine of Harrisburg v. Forster, 8 Watt. 12, has been overruled. Hanna v. Meconkey, 33 Leg. Int. 330; Downey v. Garard, 24 Pa. St. 52; Campbell v. Boggs, 48 Pa. St. 524; Stephens v. Downey, 53 Pa. St. 424; Conyngham's App. 57 Pa. St. 474. See also Whitaker v. Rice, 9 Minn. 1 (13); Humphrey v. Carpenter, 39 Minn. 115; Dole v. Wilson, 39 Minn. 330; Mast v. Easton, 33 Minn. 161; Wood v. Carpenter, 101 U. S. 135; National v. Carpenter, 101 U. S. 567.

MITCHELL, J.

The opinion on the former appeal (65 Minn. 162, 67 N. W. 987) contains a statement of most of the material facts. A second trial resulted in a verdict for the defendant, and from an order denying a new trial the plaintiff appealed.

The assignments of error Nos. 15 to 21, inclusive, relate to alleged errors of law occurring on the trial. All the others are to the effect that the verdict was not justified by the evidence, or that it was contrary to law. A motion for a new trial on the ground that the verdict is contrary to law is somewhat in the nature of a demurrer to the evidence; that is, conceding all that the evidence tends to prove, the verdict is not supported by the principles of law applicable to the facts. As the same facts and law which apply to "verdicts not justified by the evidence" also apply to "verdicts contrary to law," all of the assignments of error, excepting 15 to 21, inclusive, may be considered together.

The answer set up two defenses, viz. the statute of limitations and payment. The plea of payment was special, and not general, and was as follows:

"On the 28th day of November, 1885, said Horace B. Strait, for the purpose of paying the indebtedness of said firm [Geo. F. Strait & Co.] to said bank, which then consisted of said $10,000 note [the one in suit] and a small overdraft owed by said firm to said bank, deposited and delivered to said bank the sum of $12,500, which said bank then accepted and received in payment of said overdraft and said note, and then and there said bank canceled said note, and stamped the same 'Paid.' "

There are further allegations that, after the burning of the mill of Geo. F. Strait & Co. in November, 1885, the books and papers of the firm were removed to the bank, of which one How was cashier, and the business of settling up the affairs of the firm intrusted to, and conducted by, How, who was also a member of the firm, and that H. B. Strait had no knowledge of the outstanding accounts or business affairs of the firm except as reported to him from time to time by How; and that thereafter he paid to and through said bank all of the indebtedness of the firm outstanding at the time of its dissolution, which had not theretofore been paid, "which was reported to

him by said How, or of which he had any knowledge, notice or information." It requires no argument to show that these allegations are wholly irrelevant and immaterial, and add nothing to the previous special plea of payment. They do not once refer to the claim in suit, or allege that it was one of the claims reported to him by How, or one of those which he paid. So much for the pleadings.

The note of Geo. F. Strait & Co., which is the foundation of plaintiff's claim, was dated October 13, 1885, and matured January 1, 1886. That firm was dissolved not later than May 30, 1887, when George F. Strait died. Horace B. Strait, whose estate is the present defendant, died February 25, 1894, eight years and nearly two months after the maturity of this note. No proceedings for its collection were instituted until it was presented as a claim against his estate. This note was a renewal of a prior note. For the purpose of taking the case out of the statute of limitations, the plaintiff alleged that How and Strait fraudulently concealed from it that the original note was renewed, instead of being paid, and falsely stamped the renewal note as paid, and fraudulently concealed the fact that the latter note and the debt which it represented had not been paid, and that the bank did not discover the facts constituting the fraud until 1894; thus attempting to bring the case within G. S. 1894, § 5136, subd. 6, which provides that in an action for relief on the ground of fraud the cause of action is not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud.

The burden was on the plaintiff to prove the fraud, and that it did not discover it until within six years before the death of Horace B. Strait. Humphrey v. Carpenter, 39 Minn. 115, 39 N. W. 67; Morrill v. Little Falls, 53 Minn. 371, 55 N. W. 547; Duxbury v. Boice, 70 Minn. 113, 72 N. W. 838. But the facts constituting the fraud are deemed to have been discovered when, with reasonable diligence, they could and ought to have been discovered. The mere fact that the aggrieved party did not actually discover the fraud will not extend the statutory limitation, if it appears that the failure sooner to discover it was the result of negligence and inconsistent with reasonable diligence. Duxbury v. Boice, supra.

This rule should certainly be applied to its full extent when the

party to be charged is dead, and his estate is sought to be held liable, not for his own personal acts, but for those of a partner.  As all the members of the firm of Geo. F. Strait & Co., including How, the cashier of the bank, were dead, the evidence consisted largely of the books and records of the bank, and the testimony of the teller and bookkeepers, explanatory of the same, and of the manner in which the business of the bank was conducted.

It appeared that the "original" firm note appeared on the books of the bank to have been paid or taken up when the "renewal" firm note (A 1) was executed; also that the latter was given a "bank number," and regularly entered on the bank books as one of its bills receivable, and so continued until after the death of How, in December, 1893.  According to the books, it remained a live asset of the bank, as they contained nothing to show that it had ever been paid. During all or most of that time it was kept with other notes in one of the bill cases.  The How note (A 26) was never given a bank number, or entered on the books as a bank asset.  Interest continued to be indorsed "Paid" on the firm note up to July 1, 1890. The note A 26 was in How's handwriting.  When, or by whom, the firm note was stamped, "Paid Nov. 28th, 1885" (which was before its maturity), could not be positively proven, but all the circumstances point very strongly to the conclusion that it was done by How, and that he, for some improper purpose of his own, was endeavoring to conceal the nonpayment of the firm note from both the bank directors and his own partners, and that, in order to carry out this scheme, as well as to deceive the national bank examiners, he attached to the firm note his own individual note for the same amount, which he could, when necessary, exhibit as a bank asset.

There is very slight, if any, evidence that Strait was a party to, or at all cognizant of, this fraud; but, of course, in law he would be responsible for any act of How in the premises prior to the dissolution of the partnership.  The directors of the bank had monthly meetings; also an examining committee, whose duty it was to examine the books and assets of the bank; but they seem to have performed their duties very imperfectly, taking How's word for almost everything, without actually examining either the books or the bills receivable.  In fact, after the mill burned, How seems to

have been practically the bank as well as Geo. F. Strait & Co. until his defalcations came to light in December, 1893.

Even if it be conceded that the evidence of the fraud charged, and that the bank directors did not actually discover it until within the statutory limitation, was conclusive, the evidence made a case for the jury upon the question whether their failure to discover it sooner was not inconsistent with the exercise of reasonable diligence, and the result of their own negligence. The evidence on both defenses having been submitted to the jury, and their verdict being a general one, the case should be affirmed, unless the court, during the trial, committed some error which was duly excepted to, and is assigned as error.

2. It should be here stated that when How's defalcations were discovered,—apparently by H. B. Strait, who was the president of the bank, and one Thiem, the assistant cashier,—it was found that he was indebted to the bank in the sum of $10,000, exclusive of the note A 26, attached to the firm note A 1. Thereupon Thiem, in the interest of the bank, but without previous consultation with the directors, unless it was Strait, procured from How his notes for some $15,000, the full amount of his supposed indebtedness to the bank, including the note A 26; also conveyances of some real estate. Thiem took these notes and conveyances in his own name, but afterwards transferred them to the bank, which sold some of the property, credited How with proceeds, and in August, 1894, filed a claim against his estate for the balance due on the notes.

Upon the trial the defendant offered no evidence tending to prove payment in the manner alleged in the answer or in money, either at the time stated or at any other. It appeared that Strait at the time stated did deposit $12,500 to the credit of the account of Geo. F. Strait & Co., but it conclusively appeared that none of this was ever applied on the note in question, but that it was all checked out for other purposes by the firm, many of the checks being drawn by How. The contention now is that the bank accepted the individual note of How (A 26) as absolute payment of the firm note A 1. Under a general plea of payment, it may be proved in any manner by which payment may be made; but proof of payment in the manner now claimed would be clearly inadmissible under the special

plea in the answer.   There would be a fatal variance between the allegation and the proof.

It is urged that the allegation of nonpayment in the complaint and the general denial in the answer formed a complete issue on the question of payment, irrespective of the special plea.   There are some cases which seem so to hold, but such a rule is both illogical and contrary to the spirit and purpose of the code system of pleading.   Payment is a matter of defense, and the allegation of nonpayment in the complaint was unnecessary.   A denial, either general or special, puts in issue only the material allegations of the complaint; that is, those which the plaintiff is required to prove in order to establish his cause of action.   Moreover we think that, under any view of the law, the general denial must be held to be limited and qualified by the facts alleged in the special plea.

The record is a very difficult one to follow and fully to understand.   But, after carefully examining it more than once in connection with the briefs, we can arrive at no other conclusion than that plaintiff's counsel on every necessary occasion objected to any evidence tending to prove payment by the bank's acceptance of How's note on the ground that it was not admissible under the pleadings; also that, in the main, the trial court ruled in his favor.   When defendant's counsel first offered How's note (A 26) for the purpose of proving payment, the court excluded it, but afterwards admitted it for the sole and limited purpose of showing that it was the note which was referred to in the inventories of bills receivable which were submitted and read to the examining committee, upon the theory, evidently, that this would have some bearing upon the question when the bank did or should have discovered the existence and nonpayment of the firm note A 1.   Subsequently, when defendant's counsel sought to introduce certain argumentative evidence tending to prove that the How note must have been accepted in payment of, and as a substitute for, the firm note, counsel for the plaintiff interposed substantially the same objection.   On this occasion the court seems to have overruled the objection, although it is not clear but that it may have considered the offered evidence admissible for some other purpose.

Again, when defendant's counsel proposed for the same purpose

to go into the matter of the notes and real-estate security taken by Thiem from How in December, 1893, counsel for plaintiff interposed the same objection. The court, in effect, excluded the evidence for the purpose of proving payment by the acceptance of How's note, but held that defendant was entitled to credit on the note in suit for whatever the plaintiff had collected or realized out of the securities and notes of December, 1893, properly applicable on that note, and permitted defendant to go into the history of that transaction for the sole purpose of showing how much had been realized out of it which should be credited on the note in suit.

During the lengthy examination of witnesses, which took a very wide range, some items of evidence may have been incidentally admitted without objection which were pertinent only on the question of payment by note, but the record, as a whole, clearly shows to our minds that counsel for the plaintiff never consented to the trial of any such issue, but strenuously and continually objected throughout the trial to the introduction of any evidence on that issue; and the rulings of the court were certainly such as to justify him in assuming that they were in his favor, and that no such issue was being tried. And we must assume that he governed himself accordingly in the introduction of evidence.

After the evidence closed, he requested the court to charge the jury that, as a matter of law, the evidence would not warrant them in finding that either of the How notes were substituted as payment for the note in suit; and the court refused so to charge. The court did so charge as to the notes of December, 1893, but left it to the jury to determine whether the original How note (A 26) was accepted by the bank in payment of the note in suit. In view of the issues made by the pleadings, and the manner in which the case was tried, it was error for the court not to grant the entire request. If, on the trial, the court had ruled against the plaintiff, and it appeared that the plaintiff had fully introduced its rebutting evidence, without any suggestion that it was taken by surprise, we might have felt at liberty to affirm, and permit defendant to amend his answer nunc pro tunc so as to conform to the evidence, as was done in Adams v. Castle, 64 Minn. 505, 67 N. W. 637. It may be, as counsel for defendant suggests, that the evidence introduced is all

there is on that issue, but, in view of the way the case was tried, we cannot assume that such is the fact. As it cannot be told on which defense the jury based their verdict, the order appealed from must be reversed, and a new trial granted.

So ordered.