FIRST NATIONAL BANK OF SHAKOPEE v. H. BURTON STRAIT.

January 30, 1899.

Nos. 11,373—(234).

**Verdict Sustained by Evidence.**
Evidence *held* to justify the verdict.

**Admission of Evidence—Charge to Jury—Court Sustained.**
Numerous exceptions to the rulings of the trial court in the admission of evidence and to its charge to the jury considered and disposed of.

Appeal by defendant, as administrator of the estate of Horace B. Strait, deceased, from an order of the district court for Scott county, Cadwell, J., denying a motion for a new trial, after a verdict in favor of plaintiff for $8,875. Affirmed. The inventories mentioned in the opinion were introduced in evidence to show that the firm

note, after execution by How of the renewal notes, was included therein and continued to be treated by the bank as an asset.

*J. A. Coller*, and *E. & W. N. Southworth* and *Warner, Richardson & Lawrence*, for appellant.

*Chas. G. Hinds* and *Henry Hinds*, for respondent.

MITCHELL, J.

This case has already been twice before this court, first in 65 Minn. 162, 67 N. W. 987, where a verdict for the plaintiff was set aside because of error, in admitting incompetent evidence, and again in 71 Minn. 69, 73 N. W. 645, where a verdict for the defendant was set aside because of the admission of evidence which was inadmissible under the pleadings. A third trial resulted in a verdict for the plaintiff, and this appeal is from an order denying defendant's motion for a new trial, on the grounds that the verdict was not justified by the evidence, and of errors of law occurring on the trial.

The two defenses, it will be remembered, are payment and the statute of limitations; but before the last trial a general plea of payment was substituted for the special one referred to in the opinion on the second appeal. The only payment relied on at the trial was the alleged execution by How of his individual note, and its acceptance by the plaintiff bank in absolute payment of the note of the firm of G. F. Strait & Co. (of which both How and H. B. Strait were members), upon which plaintiff's cause of action is founded. This firm note having matured January 1, 1886, and H. B. Strait, whose estate is defendant in this action, not having died until February 25, 1894, the plaintiff sought to bring the case within the provisions of G. S. 1894, § 5136, subd. 6, on the ground of fraud in concealing from the board of directors the fact that the note had not been paid. While some items of new evidence were introduced on the last trial, we cannot discover that the evidence, taken as a whole, materially differed in its probative force from that introduced on the former trials. It is so voluminous and of such a character that it is impracticable, if not absolutely impossible, to discuss and analyze it exhaustively, and anything short of that would be unprofitable, and, indeed, positively misleading. On this branch

of the case, we shall therefore content ourselves with saying merely, that, in our opinion, the evidence made a case for the jury on both issues.

1. The closest question in the case, under the evidence, is perhaps upon the statute of limitations. There was unquestionably plenary evidence to justify the jury in finding that the nonpayment of the note was fraudulently concealed from the board of directors, and that the latter did not actually discover the fraud until within six years prior to the death of Strait. Of course, the question remained whether the board of directors could not, and ought not, in the exercise of reasonable diligence, to have sooner discovered the fraud. But Strait was himself a director and the president of the bank in 1885, when the firm note was executed, and so continued until January 1, 1892, and How was a director and the cashier of the bank in 1885, and so continued until his death on December 22, 1893. In view of their fiduciary relations to the bank, the affirmative duties to it resulting from those relations, and the confidence which directors naturally, and to a certain extent must, repose in the executive officers of the bank, we think the whole question was one for the jury. As both Strait and How were personally interested in the matter, notice to them would not be notice to the bank.

2. It only remains to consider the assignments relative to alleged errors of law occurring on the trial. As these are very numerous, we shall only refer to a few which seem the most important, and dismiss the others by merely saying that we think that they are without merit. These assignments are of two classes: First, those relating to the admission of evidence; and, second, those relating to the charge of the court.

The inventories referred to in the first and second assignments of error, which were made by How or under his direction, and were by him submitted to or read to the board of directors, were competent upon the question whether How had executed his individual note as a substitute for and in payment of the firm note, and whether the board of directors had accepted it as such. It must be kept in mind that the amendment to the answer had introduced a new element into the case, viz., whether the firm note had been

paid by the execution and acceptance of the individual note of How. This involved the acts and intentions of both How and the board of directors in that regard, and rendered them material and competent evidence on that question, wholly irrespective of the former partnership between Strait and How. On the first trial, acts or admissions of How made after the dissolution of the partnership were admitted in evidence against Strait's estate, for the purpose of establishing fraud on Strait's part, and we held that this was error. But in this instance the act of How was not admitted for any such purpose, but upon the issue of payment. This disposes of several of the assignments of error, especially the twenty-second.

The introduction in evidence of admissions of counsel made on the former trial, if error, was without prejudice, for the reason that the facts to which they related were conclusively proved, independently of the admissions. The only objection made to the evidence referred to in the nineteenth assignment of error was that it was not proper redirect examination. Conceding that it was not, it was nevertheless within the discretion of the court to permit it.

The objection urged to the admission of the evidence referred to in the twenty-first assignment of error is that it must have been based on conversations between the witness and How, then dead, and was therefore inadmissible under the statute. Conceding this to be so, counsel for the defendant had waived the statute by having himself gone into the same matter in his examination of the witness.

We shall now consider some of the objections to the charge of the court. The court did not charge the jury that it was incumbent on the defendant to prove an express agreement on part of the bank to accept How's note in payment of the firm note. That is not the fair construction of the part of the charge quoted in the twenty-third assignment of error. Such was clearly not the meaning of the court, and it could not have been so understood by the jury, in view of other parts of the charge. In the part quoted, the court expressly instructs the jury that no express agreement had been proved. This being so, if the court had intended to hold that an express agreement was necessary, he would have instructed the jury, as a matter of law, that the defense of payment had not been

proved, and taken that issue away from them altogether. After saying that the defendant must prove an express agreement, the court immediately added,

"Or that the plaintiff bank, by its board of directors or other officer or officers than Strait or How, confirmed and approved, in some way, of the substitution of the How note for the note in suit," etc.

Other portions of the charge clearly show that the question of an implied confirmation or approval of the substitution was left to the jury under proper instructions.

Exception is also taken, under the twenty-fifth assignment of error, to the instruction of the court to the effect that it is a constructive fraud upon a bank for its cashier, president or any director having knowledge of a cause of action, or a demand in its favor against himself, not to make known the existence of such cause of action to the governing body of the bank, which, in the case of a national bank, is the board of directors; that the duty of such bank officer requires, in such case as this, that he communicate to such body the facts relating to the demand or cause of action, and, if he fails to do so, the right of action of the bank does not accrue so as to set the statute of limitations in motion, until such information is obtained by the board of directors. We may concede, without deciding, that this statement of the law would be too broad, as an abstract proposition of universal application, without reference to the particular facts of the case or the nature of the duties of the bank officer. But there was certainly no error in the instruction as applied to the particular facts of this case.

Strait, the president, and How, the cashier, were jointly liable to the bank on the firm note. There is no claim or pretense that it was ever paid, or any provision ever made for its payment, except by the individual note of How, and defendant contends that the circumstantial evidence tends to prove that there was an understanding between Strait and How that the latter should take care of the firm note in that or some other way, and that Strait intrusted the whole matter to How, his codebtor, as well as the cashier of the bank. In view of the long-continued custom in that regard, Strait may

have had a right to assume in good faith that How had authority to lend the money of the bank to the firm of which he himself was a member, and also to renew such loans; but he must have known, and was bound to know, that How, as cashier, had no authority to accept, in behalf of the bank, his own individual note as payment of a firm note, and that an attempt to do so, without express authority from the board of directors, would be an actual, and not merely a constructive, fraud on the bank. Under these circumstances, we think that Strait owed the bank the affirmative duty to see to it that How did pay the firm note, or to inform the board of directors that he had not done so, and that the note was still unpaid, and, if How assumed, as defendant claims he did, to pay it by substituting his own note, to inform the board of directors of the fact, and ascertain whether they had confirmed and approved, or would confirm and approve, the substitution. It was this state of facts to which the charge of the court was directed; and, as thus applied, it was correct.

A word in regard to the part of the charge referred to in the twenty-seventh assignment of error. The "firm" note, to which we have heretofore always referred, and generally referred to on the trial, as "C1," and the one upon which plaintiff's action is based, was executed October 13, 1885. It appeared from the evidence that this note was taken by How, as cashier, in renewal of a prior note of the firm to the bank. We may be pardoned for saying that we think the learned counsel for the plaintiff, in pleading his cause of action, ought to have started out with the last note, and based his cause of action on that and what was subsequently committed or omitted, for that is what the whole case came down to on the trial; but, instead of doing this, he incorporated into his complaint an allegation that the acceptance of this renewal note was unauthorized, and in violation of the duties of Strait, as president, and of How, as cashier, because they, being personally interested in, and parties to, the transaction, had no authority to act for the bank. We assume that it was to this that the court referred in the part of the charge complained of. In view of the entire evidence, and the theory upon which the case was tried throughout, we cannot see that this instruction had any relevancy to the case; but, for the

75 M.—26

same reason, we are unable to see how, whether right or wrong as an abstract proposition, it could have prejudiced the defendant, especially in the light of the charge as a whole.

Exception is also taken to the instruction of the court that "so far as the plaintiff is concerned, the firm of G. F. Strait & Co. was dissolved on May 30, 1887, the time of the death of G. F. Strait [one of the partners] and not before." Under the evidence, this was correct. There was no evidence that there was any dissolution of the partnership before that time by the voluntary act of the partners. Neither is there any evidence that any notice of dissolution had been given to the bank, which was an "old customer." The burning of the flouring mill, and ceasing at that time to carry on the milling business, did not work a dissolution of the partnership. There is affirmative evidence that the firm did continue, at least for the purpose of closing up its business, of which this very note was a part. It also appears that the partners, including Strait himself, continued to make deposits in, and draw checks on, the plaintiff bank, in the firm name. There was no evidence rebutting, or in any way impairing the force of, these facts. This covers all the points that we deem it necessary to discuss.

Order affirmed.