# JOHN G. LUNDQUIST v. JOHN W. PETERSON AND OTHERS.[1]

## Nos. 19,698—(18[2], 100[3]).

### June 23, 1916.

**Sale of partnership interest — evidence of fraud.**

1. The evidence sustains the finding of the court that the defendants made fraudulent representations to the plaintiff at the time he transferred to them his interest in the property of a copartnership composed of the defendants and the plaintiff as to the value of the property, and the condition of the business, and concealed from him that they had used copartnership funds in acquiring property in their own names.

**Reliance on representations — finding sustained by evidence.**

2. The evidence sustains the finding that the plaintiff believed and relied upon such representations and was induced by them to make the transfer.

**Limitation of action — discovery of fraud.**

3. The evidence sustains the finding that the action was commenced within six years after the plaintiff discovered the facts constituting the fraud, and that he was not put upon inquiry by facts in his possession which if pursued would have resulted in an earlier discovery.

**Accounting.**

4. The defendants were the managing copartners and actively conducted the copartnership. The plaintiff lived in a foreign country. The defendants. failed to keep books of account, and mingled their own property with the copartnership property, and used copartnership funds in their own business, and an accurate accounting could not be made. Under these circumstances it is *held* that the court did not err in requiring the defendants to account to the plaintiff for the amount

[1]Reported in 158 N. W. 426; 159 N. W. 569.
[2]April, 1916, term calendar.
[3]October, 1916, term calendar.

Note.—For cases passing upon the question of fraud by partner in relation to partnership real estate, see note in 28 L.R.A. 104.

And as to effect of fraudulent concealment of cause of action as bar to running of statute of limitation, see note in 25 L.R.A. 566.

of his original investment, with interest, less sums received by him from the copartnership.

**Same.**

5. In taking the account not all the moneys received by the plaintiff were charged against him, and a new account must be taken unless the plaintiff consents to a reduction.

October 20, 1916.

**Interest — computation on advances and withdrawals.**

6. Upon reargument of the question of accounting considered in paragraph 5 it is *held* proper to apply the ordinary partial payment rule in computing interest on the plaintiff's original investment and advances and amounts withdrawn; but that interest should be computed on the $5,000 paid by the defendants to the plaintiff upon his sale of his interest in the copartnership, it being found that the sale was induced by fraud, and such sum and interest be deducted at the final casting of the account, and such sum not applied as of its date.

**New trial on accounting.**

7. It it further *held* that there should be a retrial of the accounting without the option in the plaintiff to consent to a reduction.

Action in the district court for Meeker county for discovery as to all the transactions of, and complete accounting concerning, the partnership of Lundquist & Peterson Brothers, to restrain defendants from diverting any of the property of the partnership, to compel defendants to pay to plaintiff an undivided one-third of all the profits, and to set aside the partnership settlement referred to in the opinion. The case was tried before Powers, J., and, after his illness, by agreement of the parties was submitted upon a transcript of the evidence taken at the trial to Qvale and Daly, JJ., who made findings vacating the sale and settlement by plaintiff, on the ground that the same were induced by the fraud of defendants, and ordered judgment for $14,273.54 against defendants John W. and Frank J. Peterson. Defendants' motion for amended findings was denied. From an order denying their motion for a new trial, defendants appealed. Reversed.

*Lancaster, Simpson & Purdy, E. P. Peterson* and *Alva R. Hunt,* for appellants.

*H. E. Fryberger* and *L. K. Sexton,* for respondent.

DIBELL, C..

This action was brought to set aside as fraudulent a partnership settlement made between the plaintiff and the defendants and for an accounting. There were findings for the plaintiff. The defendants appeal from the order denying their motion for a new trial.

1. The defendants are brothers. The plaintiff is their cousin and married their sister. He came to this country from Sweden in 1875, when 24 years of age, and for two years lived with the father of the defendants on his farm near Grove City in Meeker county. Then he engaged in railroad contracting. In 1886 the father of the defendants died. Shortly before his death he deeded to them the farm on which they all lived, consisting of 1132 acres, known as the Brookville farm, and transferred to them the personal property used with it. It 1888 the plaintiff and the defendants entered into a copartnership for the purpose of operating the farm under the name of Lundquist & Peterson Brothers. The lands were put in at a valuation of $24,700 and the personal property at $4,544, making a total of $29,244. The plaintiff was to contribute one-half of this amount and the three were to be equal owners. He contributed $14,303.54, making the copartnership investment something like $43,000. Afterwards both the plaintiff and the defendants added to the investment. One-third of the farm and other property was conveyed to the plaintiff.

During his stay in this country the plaintiff accumulated something like $40,000, and in 1889, soon after the formation of the copartnership, he returned to Sweden and bought an estate there. He came to this country again in 1890, and was at the farm for a few days. He returned to Sweden in the same year and was not in this country again until in 1910.

The two defendants operated the farm. Books of account were kept for some time but not after 1893. Troubles arose and the plaintiff and the defendants became estranged and were mutually distrustful. The plaintiff ignored communications sent him concerning the farm. In January, 1896, the defendants commenced an action against the plaintiff for a dissolution of the partnership and a temporary receiver was appointed. In April, 1897, the plaintiff commenced a like action against the defendants. In September, 1897, the defendant John W. Peterson went to Sweden, and after negotiating with the plaintiff for something like a week

purchased in behalf of himself and his brother his interest in the copartnership for $5,000.

The court finds that in the negotiations resulting in the purchase the defendants fraudulently represented to him that his share of the partnership was not worth in excess of $5,000; that the business was being run at a loss; and that the partnership was indebted in the sum of $12,000 and had nothing with which to pay. The court further finds that the defendants had mingled the copartnership property with their own, and had used copartnership funds in purchasing property for themselves, and concealed this from the plaintiff.

The record is a long one. The transactions involved were from 15 to 25 years old at the time of the trial. Many of the claims of the plaintiff are extravagant in character and unsupported by testimony; but a consideration of the evidence brings us to the conclusion that in substance the finding of the court of fraud in the respect mentioned is sustained.

At the time the transfer was made it was agreed in a separate writing, and this seems to have been at the instance of the plaintiff, that the defendants should sell the lands, if they could be sold at a fair valuation, before September 15, 1899, and if not so sold they should then be sold at public auction, and that the net proceeds of the sale after deducting $15.000 judgments, etc., against them, should be equally divided between the three copartners. This plan was never carried out, and the court finds that the plaintiff abandoned his rights under it. The defendants claim that in December, 1897, he released his rights under this agreement for a valuable consideration, receiving $1,000. The court finds that a release was not given and that the plaintiff did not receive $1,000. The right to bring suit for a breach of this agreement is barred by the statute; but if fraud induced the making of the agreement, of which the agreement to sell the lands for the benefit of the copartners was a part, the plaintiff has his action and it is not affected by his failure to bring suit, either in equity or at law, upon the agreement to resell. We refer to these matters in view of the claim of the defendants that the plaintiff lost his right to sue for fraud. Of course the agreement to resell is proper to be considered in determining whether there was in fact fraud, and if so whether the plaintiff was deceived.

2. The court found that the plaintiff relied upon the false representa-

tions, and was induced by them to make the sale. The question is whether this finding is sustained by the evidence. It presents some difficulty. In determining it the character and situation of the parties should be in view. They were all practical, shrewd men, and were accustomed to business transactions of the general character of that involved. The defendants had managed the property for many years and were familiar with it. They knew its character and value. The plaintiff was not personally familiar with it. He had received communications from others relative to it, and had talked with others about it, and had some knowledge. He and the defendants had been in trouble over the property and he had been suspicious of them. They had brought suit against him for a dissolution, and he had brought suit against them for a dissolution. Both suits were pending. In this action the plaintiff charged the defendants with serious misconduct and wrongdoing, and alleged that the copartnership had made profits to the amount of $50,000 since its formation. The complaint was not verified by the plaintiff and he had no personal communication with his attorney. He corresponded with him. The settlement was made in Sweden many thousands of miles away and after negotiations lasting for a week.

The defendants cite Van Trott v. Wiese, 36 Wis. 439, in support of their contention that in law there was no reliance by the plaintiff upon the representations. In that case a settlement was made pending a suit for dissolution. The defendant, who claimed the fraud, had commenced an action for dissolution and in his verified complaint alleged the value of the copartnership stock and the amount of the debts and charged his partners with embezzlement and the making of fraudulent entries. It was held as a matter of law that the party claiming to be defrauded could not be heard to claim that he was misled when an action for dissolution of the character stated was pending when the settlement was reached. We appreciate the force of the argument, but we are unable to hold that the evidence makes the question of the plaintiff's reliance upon the fraudulent representations one of law. It was one of fact and the finding of the court is sustained. Other cases, useful in considering the question of reliance and the inducing cause, are cited by counsel. Dorsett v. Ormiston, 25 Misc. 570, 55 N. Y. S. 1037; Scheuer v. Berringer, 102 Ala. 216, 14 South. 640; Turner v. Otis, 30 Kan. 1, 1 Pac. 19; Richardson v. Walton,

(C. C.) 49 Fed. 888; Claflin v. Bennett (C. C.) 51 Fed. 693. They do not control the result.

3. Another question is whether the action is barred by the statute of limitations.

In actions for relief upon the ground of fraud the statute runs from the time of the discovery of the facts constituting it. G. S. 1913, § 7701 (R. L. 1905, § 4076). A party in legal contemplation knows the facts constituting the fraud when, in the exercise of reasonable diligence, he should have known them, and, when put in possession of facts making it his duty to inquire, he is charged with the knowledge which a fair inquiry would bring. Howard v. Farr, 115 Minn. 86, 131 N. W. 1071, Downer v. Union Land Co. of St. Paul, 113 Minn. 410, 129 N. W. 777; First Nat. Bank of Shakopee v. Strait, 75 Minn. 396, 78 N. W. 101; First Nat. Bank of Shakopee v. Strait, 71 Minn. 69, 73 N. W. 645; Humphrey v. Carpenter, 39 Minn. 115, 39 N. W. 67. The burden is upon a plaintiff seeking a recovery for fraud, when his cause of action is apparently barred, to allege and prove that he did not discover it until within six years. Downer v. Union Land Co. of St. Paul, 113 Minn. 410, 129 N. W. 777; First Nat. Bank of Shakopee v. Strait, 71 Minn. 69, 73 N. W. 645; Humphrey v. Carpenter, 39 Minn. 115, 39 N. W. 67. The statute applies to copartnership settlements. Johnston v. Johnston, 107 Minn. 109, 119 N. W. 652. The fraud was committed in 1897. This action was brought in 1913, 16 years later. The plaintiff was not in this country after 1890 until 1910. Then he came to Canada, and from there went to Florida and other parts of the United States. He was in trouble in Sweden in connection with some corporate transactions, and came to this country under an assumed name in fear of detection and prosecution and used the assumed name until about 1913. He came to Minneapolis just prior to the commencement of the suit. After 1897 he seems to have been on friendly terms with the defendants. John W. Peterson visited him in Sweden a number of times. He went to see him when he came to Canada and loaned him $1,000. The plaintiff's family went to the Brookville farm, about 1911, and stayed there with the defendants until just before suit was commenced. The information the plaintiff got in 1913 came from a brother-in-law who had married a sister of the defendants and of the plaintiff's wife and who was hostile to the defendants at the time. This brother-

in-law was active in discovering and publishing the fraud. His activity might cause distrust of the integrity of the charge of fraud, but it does not tend to show prior knowledge in the plaintiff that fraud existed. If the plaintiff believed the fraudulent representations made in 1897, and the trial court has found that he did, the evidence does not, as a matter of law, show that he had knowledge or notice of their falsity for any considerable time prior to suit. The lapse of time between the fraud and the bringing of suit is substantially the same as in Johnston v. Johnston, 107 Minn. 109, 119 N. W. 652. The trial court found that the plaintiff did not have knowledge of the fraud until shortly before suit and that he was not put upon inquiry which pursued would have brought knowledge. The finding is sustained.

4. The two brothers conducted the active operations of the farm. For a time they kept books of account. None were kept after 1893. At that time some hostility had arisen between the plaintiff and the defendants. The court finds that the defendants used partnership funds in buying property in their own names, and in forwarding their own interests, and that they held property which was acquired by the use of partnership money, and that they mingled their own and the copartnership property, and that it was not possible to determine the status of the partnership accounts. The court does find, however, that the property in the name of the copartnership was in 1897 of the value of at least $55,000. Since that time the copartnership property has greatly increased. The court held that the defendants should account to the plaintiff for the amount of his contribution to the copartnership, with legal interest, less amounts which he had received from the copartnership. We are of the opinion that under the peculiar circumstances the court was justified in adopting this method of accounting. Under similar circumstances a like rule has been so held in the case of a trustee. Perrin v. Lepper, 72 Mich, 454, 40 N. W. 859.

5. In making the accounting upon this basis the court allowed the plaintiff $14,303.54, the amount of his original investment, with lawful interest from the date of the copartnership agreement, and deducted as of the dates of their payment three items aggregating $839.70, which were sent to the plaintiff by the defendants upon sales of portions of the Brookville farm.

The court found that in addition to the $14,303.54 the plaintiff had prior to leaving for Sweden in May, 1889, advanced an amount aggregating more than $4,000, and that though the plaintiff had received sums in excess of $839.70, the total of such excess was not so much as $4,000. It made no more specific accounting upon these items and let those on one side offset those on the other.

We have been unable to find from the evidence that the plaintiff paid into the copartnership as much as $4,000 in addition to his original investment. Our computation brings the amount short of it. Defendants do not point out any particular in which there is error in this finding, nor are the specific items which constitute it anywhere shown. If this were the only item of the account, we ought not to disturb the finding.

The defendants claim that the plaintiff withdrew from the firm much more than $4,000. We are of this view.

It seems quite certain that in September, 1889, $2,000 was sent to the plaintiff.

In March, 1890, the plaintiff was in this country. He then received between $4,500 and $5,000. In his testimony he claims that something in excess of $2,000 was in payment of an indebtedness which had been collected for him by the defendants, and this seems to be so, and that the rest was money which they had promised their father to pay to the plaintiff's wife at the time the farm was transferred to them. In Exhibit 5, a letter written by the plaintiff to the defendants in January, 1890, it appears that the money due from them to his wife was paid at that time. It is fairly clear that as much as $2,000 was paid by the defendants to the plaintiff in March, 1890, and perhaps more.

In November, 1891, it seems that the defendants sent the plaintiff something like $1,500 or $2,000, at least as much as $1,500. The plaintiff makes some claim that this was not money for which he should account, but it is clear that he should. If there were any question about it, and there does not seem to be much, the letter, Exhibit 1, ought to remove it.

In May, 1892, a part of the Brookville farm was sold. A purchase money mortgage for $4,800 was taken in the name of the plaintiff and was delivered to him. When the partnership settlement was made in Septem-

ber, 1897, it was transferred to the defendants. The court finds that there was then due on it $4,200. It is not clear how much the plaintiff received upon this mortgage or upon the sale of the land. At one place in his testimony he says he received something like $2,000 from copartnership land. If he received all of the interest, but apparently he did not, it amounted to nearly $2,000. He may have received more than $2,000 on the mortgage, or he may have received less. The defendants claim about this amount and we leave it so.

A finding that the plaintiff received as little as $4,000 in excess of the $839.70 is not sustained by the evidence.

There must be a new trial of the accounting, unless a reduction of the recovery can be had, that is, of the accounting as to the sums contributed by the plaintiff in excess of $14,303.54 and the amounts received by him in excess of $839.70. There should not be a new trial of other issues. The trial may be had upon the evidence already taken, or upon such evidence in connection with other evidence to be taken as the trial court shall determine. A new trial of the accounting will likely be more satisfactory to the parties, for these items can then be quite definitely settled, but we ought not to put them to further litigation if it can be reasonably avoided. The plaintiff should have the opportunity to consent to a reduction of the amount found due him so far as it can be given him without impairing the rights of the defendants.

Upon the going down of the remittitur there will be a new trial of the issue stated, unless within ten days thereafter the plaintiff shall file his consent in the office of the clerk of the district court that the accounting be changed by adding to the amount adjudged to be due from the defendants to the plaintiff the sum of $4,000 as of May 1, 1889, and by deducting therefrom the sum of $2,000 as of September 30, 1889; the sum of $2,000 as of March 31, 1890; the sum of $1,500 as of December 1, 1891, and the sum of $2,000 as of September 16, 1897. If he files such consent a new trial shall be deemed denied.

Affirmed on condition.

On October 20, 1916, the following opinion was filed:

PER CURIAM.

6. The defendants' motion for a reargument was granted so far as to permit a reargument of the question of accounting considered in the fifth paragraph, including the question of the proper method of applying payments and computing interest; and the defendants were permitted to make such additional assignments of error as seemed necessary. Additional assignments were made and briefs were filed and oral arguments have been submitted on behalf of the opposing parties.

At the original hearing nothing was said about the proper method of the computation of interest and the application of the amounts received by the plaintiff from the copartnership. The trial court allowed interest by the ordinary mercantile rule applicable in case of partial payments, applying the payments made to the discharge of interest due and then in reduction of the principal, including the sum of $5,000 paid by the defendants to the plaintiff upon their purchase of his interest in the copartnership. This is the ordinary interest rule in this state. Betcher v. Hodgman, 63 Minn. 30, 65 N. W. 96. If the defendants were properly required to account to the plaintiff for the amount of his original investment and advances with interest, less sums received from the copartnership with interest, and we have held this method of accounting proper, we do not see why the interest rule stated should not apply to the original investment, advances and sums withdrawn from the copartnership. The payment of $5,000 made on September 16, 1897, is upon a different footing. That amount was paid in purchase of the plaintiff's interest in the copartnership. It was found by the trial court, and we have sustained the finding, that the sale by the plaintiff was induced by fraud. The transaction, however, was not void. It was voidable at the election of the plaintiff. Upon his election to avoid it he should repay the $5,000 with interest. It should not be applied as a partial payment as if it were withdrawn from the copartnership. It was not received from the copartnership but from the two defendants. We hold that in making the accounting the $5,000 should draw interest from the date of its payment and be applied when the final reckoning is had.

7. Counsel have reviewed the evidence bearing upon the accounting and we have again considered it. In the accounting the trial court, in addition to the original investment of the plaintiff of $14,303.54, credited him with the sum of $4,000 advanced from time to time. It charged him with items aggregating $839.70 received by him from the copartnership upon the sale of copartnership lands. We held that the evidence so much indicated that in addition to this sum of $839.70 the plaintiff had received items aggregating $7,500 that a new trial should be had unless the plaintiff consented to a reduction by including these items. Both parties claim that an accounting upon this basis is wrong. We were not satisfied on the original hearing with the credit of $4,000 to the plaintiff and passed it with some hesitation. We are not now satisfied. Neither is it clear that the defendants have not suffered by limiting the debits against the plaintiff to $7,500 in addition to the items aggregating $839.70. There is evidence to suggest that when the plaintiff sold his interest on September 16, 1897, and received $5,000, he had received about all of his original investment and advances. Upon renewed consideration we conclude that in view of the uncertainty as to the true status of the account a new trial of the accounting should be had without an option in the plaintiff to consent to a reduction. The court may retry the issue upon the evidence already adduced or it may take evidence in addition. Upon the retrial the court is not concluded by anything said in this or the former opinion relative to the status of the account.

Judgment reversed.