## INGVOLD BUSTAD v. MARTIN BUSTAD.

116 N. W. (2d) 552.

July 13, 1962—No. 38,453.

*Fred R. Kraft,* for appellant.
*Alderson, Catherwood, Kelley & Ondov,* for respondent.

OTIS, JUSTICE.

The plaintiff instituted this action in March 1960 to recover damages arising out of various transactions with defendant during the period from 1930 to 1946. A motion for summary judgment by defendant based on the defense of the statute of limitations was granted, and plaintiff has appealed from the judgment.

Plaintiff's complaint asserts the following claims:

(1) $10,000 for gravel removed by defendant from plaintiff's property between 1930 and 1938.

(2) $1,000 for timber and wood removed by defendant from property owned by plaintiff between 1930 and 1933.

(3) $1,000 for black dirt removed by defendant from property owned by plaintiff in 1935.

(4) $3,500 for services rendered by plaintiff on behalf of defendant between 1939 and 1946.

(5) $2,000 for real estate belonging to plaintiff wrongfully conveyed by defendant in 1940.

The complaint alleges that each item of damages was initially payable by defendant to plaintiff "at some indefinite time in the future." It further alleges that periodic payments on these claims were made by defendant from 1936 until August 15, 1951. It is plaintiff's contention that on or about February 15, 1956, he for the first time discovered that assurances made by defendant that he would pay plaintiff what he owed constituted a fraud and deceit and violation of a fiduciary relationship which existed between the parties.

The issues before the trial court were framed by the complaint, depositions of the two parties, and affidavits in opposition to the motion, presented by plaintiff. Construing these instruments in the light most favorable to plaintiff, the following appear to be the facts: The plaintiff and defendant are brothers in their middle 60's, the defendant being somewhat the older of the two and unquestionably the more successful and sagacious in business. For a period of nearly 20 years, beginning before 1930 and ending in 1946, the brothers were engaged in various enterprises as partners and as employer and employee.

In view of our decision that the plaintiff's claims are barred by the statute of limitations, it is unnecessary to recite the details of each transaction out of which this action arose. Whatever may be the merits of the various claims, the disposition of all of them is governed by the same course of events which occurred between 1951 and 1956. While defendant denies that the periodic payments he made to plaintiff were to be applied on any existing indebtedness, it may be assumed, without so deciding, that on June 26, 1951, a payment of $400 by defendant revived whatever outstanding obligation he may have then

owed. Minn. St. 541.17. Plaintiff testified by deposition that none of the claims was based on a written agreement with his brother. While he frequently approached defendant on the subject of recovering what he claimed he had coming, he never received any satisfaction. He testified that when he "jumped" defendant, "it was brushed off some way or other." Although it is his claim that there was an agreement to pay him an additional $500 a year from 1939 to 1946, none of this amount was ever forthcoming. Consequently plaintiff terminated his employment with defendant in 1946, and acknowledged that their relationship thereafter was definitely strained. While plaintiff claims that defendant consistently promised to pay him whatever defendant owed him, there is no testimony that defendant ever acknowledged any debt in fact. In February 1956 the matter came to a head when, as plaintiff expressed it, "I figured he [defendant] was pulling my leg." At that time a meeting between the parties and various intermediaries was arranged, and according to plaintiff's version, "It broke up when he agreed to sign a piece of paper that it wasn't outlawed, then it broke up, went home, got a paper for him to sign, and he wouldn't sign it."

Assuming that defendant in February 1956 consented to execute a written waiver of the statute of limitations, that he assured plaintiff it would not be necessary to bring a lawsuit, that he agreed to pay plaintiff anything he owed him, and that plaintiff relied on these assurances, it nevertheless appears from the plaintiff's own affidavit that shortly thereafter a written agreement to waive the statute of limitations was presented to defendant and that he refused to sign it. Counsel for plaintiff has acknowledged that defendant's refusal to sign the waiver came to plaintiff's attention at a time when plaintiff's claims were not barred by the 6-year statute of limitations. § 541.05. In our view of the matter, this constituted a renunciation of any prior acknowledgment he may have made regarding an outstanding obligation to plaintiff, and it was incumbent upon the plaintiff at that point to commence an action within 6 years from the date of the last payment in June 1951. Clearly there was ample time in which to proceed, and plaintiff's failure to take appropriate action with full knowledge of defendant's attitude in the matter forecloses recovery.

In essence, plaintiff assigns as error the granting of the motion for summary judgment in the face of issues of fact with respect to the statute of limitations, unresolved, as plaintiff claims, because of defendant's refusal to answer various questions in his deposition. In addition, plaintiff assigns as error the court's recognition of the statute of limitations under circumstances where the issues of fraud, promissory estoppel, and whether or not the obligations were due at some indefinite time in the future were all matters which required litigation.

With respect to the allegations in the complaint that all of the claims were due at some indefinite time in the future, it is enough to say that neither plaintiff's deposition nor affidavit supports in any manner this position. The persistence with which plaintiff pressed defendant over the course of 15 or 20 years flies in the face of his contention that the debts were not due until some indefinite time within 6 years of March 1960 when this action was commenced. While it is not the function of either the trial court or of this court on a motion for summary judgment to determine the facts, it is our duty to decide from all of the pleadings, affidavits, depositions, and other parts of the record whether there is a genuine fact issue for the court to submit. We find nothing in the record to sustain plaintiff's contention in this regard.

Plaintiff relies for recovery on the principles applied in Fallon v. Fallon, 110 Minn. 213, 124 N. W. 994, 32 L. R. A. (N. S.) 486. That case involved a claim by a sister against a brother with whom she had deposited money for investment over the period of 14 years. Until some 37 years after the relationship began, she made no claim for an accounting. In rejecting the defense of the statute of limitations, this court held that under the circumstances the plaintiff's investments were to be held for an indefinite time in the future and the statute of limitations did not begin to run until there was an actual demand for payment. The same rule was applied in Andrews v. Andrews, 170 Minn. 175, 212 N. W. 408, 213 N. W. 899, 51 A. L. R. 542; and Bannitz v. Hardware Mutual Cas. Co. 219 Minn. 235, 17 N. W. (2d) 372, 159 A. L. R. 1017. These cases involved a relationship of trust between the parties which prevented their being governed by the ordinary rules applicable to debtor and creditor.

Plaintiff also contends that the statute of limitations may not be invoked where it has been permitted to run because of a fraud, or where the principles of promissory estoppel apply. In Keough v. St. Paul Milk Co. 205 Minn. 96, 127, 285 N. W. 809, 826, we stated:

"* * * In cases of fraud the delay occasioned, as here, by ignorance arising largely because of the confidential relationship and respect for integrity should not be dealt with lightly, and there should be a clear case presented before a court should at the instance of the beneficiaries of the fraud deny to the defrauded party what is his enforceable legal right."

In that case, however, we found that when the right became known prompt action was taken and held that the evidence did not compel a finding of laches.[1]

The applicable statute of limitations, § 541.05(6), provides that actions shall be commenced within 6 years "[f]or relief on the ground of fraud, in which case the cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud." In a well-considered decision by Mr. Justice Mitchell, First Nat. Bank v. Strait, 71 Minn. 69, 72, 73 N. W. 645, 646, the court construed the statute in this manner:

"The burden was on the plaintiff to prove the fraud, and that it did not discover it until within six years before the death of Horace B. Strait. * * * But the facts constituting the fraud are deemed to have been discovered when, with reasonable diligence, they could and ought to have been discovered. The mere fact that the aggrieved party did not actually discover the fraud will not extend the statutory limitation, if it appears that the failure sooner to discover it was the result of negligence and inconsistent with reasonable diligence."

We here hold as a matter of law that if there was a fraud committed on plaintiff it was discoverable long before 1954 and could not be invoked in the year 1960.

---

[1]See, also, Couillard v. Charles T. Miller Hospital, Inc. 253 Minn. 418, 428, 92 N. W. (2d) 96, 103; Voegele v. Mahoney, 237 Minn. 43, 49, 54 N. W. (2d) 15, 19; Schmucking v. Mayo, 183 Minn. 37, 39, 235 N. W. 633; Weston v. Jones, 160 Minn. 32, 36, 199 N. W. 431, 433.

Plaintiff, relying on the doctrine of promissory estoppel, cites as authority for tolling the statute of limitations Albachten v. Bradley, 212 Minn. 359, 3 N. W. (2d) 783. That case deals exhaustively with the rules governing promissory estoppel as they apply to the statute of limitations. There we recognized that where the parties have agreed to extend the time or have waived the provisions of the statute of limitations, they are estopped to assert it as a defense. Thom v. Thom, 208 Minn. 461, 467, 294 N. W. 461, 464. That rule can have no application, however, when the claimant, having knowledge that the agreement has been repudiated at a time when his action is not yet barred, nevertheless fails to act within the statutory period.

While plaintiff complains that objections interposed to his interrogation of defendant prevented a full presentation of the facts, we are of the opinion that it is not necessary to determine whether plaintiff pursued the remedies available to him under Rule 37, Rules of Civil Procedure. In our view of the matter, plaintiff has wholly failed to create fact issues with respect to the due date of the obligations, his claim of fraud on the part of defendant in inducing plaintiff to permit the statute of limitations to lapse, and the contention that the doctrine of promissory estoppel applies. Nowhere does plaintiff claim that defendant actually acknowledged an indebtedness. At most, it was plaintiff's testimony that defendant agreed to pay the plaintiff if it were found that he did owe him something on plaintiff's claims. The only reference in the record to an alleged . inducement on the part of defendant which would prevent plaintiff from bringing his action sooner is an incident which occurred in 1956 and which plaintiff concedes was promptly repudiated at a time when there was still ample opportunity to commence his action within 6 years of the last payment to him by defendant in 1951.

The salutary purpose of the statute of limitations is nowhere more forcefully demonstrated than here. This action was not commenced until after 22 years had elapsed from the time the first cause of action arose. Memories have grown dim, records have been misplaced, witnesses are no longer available. This is not a situation akin to that in the Fallon case, where a sister had no reason to make demand or

doubt the integrity of an older brother over an extended period of time. Here both parties were operating in the same or competitive businesses, were fully aware of the transactions which gave rise to these claims, and dealt with each other at arm's length for a great many years. Nowhere outside of his complaint does plaintiff claim that the obligations were due at some indefinite time in the future. On the contrary, he testified that he consistently tried in one way or another to persuade his brother to pay him his various claims during most of the period subsequent to 1938. To hold that under these circumstances plaintiff's claims, which in any view of the matter accrued no later than 1946, are not barred in the year 1960, would render the statute of limitations meaningless. We do not choose to depart from a well-founded policy which discourages the instituting of lawsuits based on claims which have long since become stale, if not moribund.

Under Rule 56.03 of Rules of Civil Procedure, the trial court may not order summary judgment unless the pleadings, depositions, affidavits, and other portions of the record show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Plaintiff has the benefit of whatever view of the evidence is the more favorable to him. We have held that the rule is intended to secure a just, speedy, and inexpensive disposition. It is not designed to afford a substitute for a trial where there are issues to be determined. Sauter v. Sauter, 244 Minn. 482, 70 N. W. (2d) 351; Abdallah, Inc. v. Martin, 242 Minn. 416, 65 N. W. (2d) 641; Anderson v. Twin City Rapid Transit Co. 250 Minn. 167, 186, 84 N. W. (2d) 593, 605. We are of the opinion it was appropriately applied in this litigation.

Under the circumstances we hold that the court was correct in entering summary judgment for respondent and it is affirmed.

Affirmed.

MR. JUSTICE ROGOSHESKE, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.