Robert A. BLEGEN as Trustee and Plan Administrator of the Money Purchase Pension Plans of Conrad Sheet Metal Company, Inc., H. Conrad Manufacturing Co., Willmar Sheet Metal, Inc., and Southside Plumbing & Heating Co., Appellant,

v.

MONARCH LIFE INSURANCE CO., et al., Respondents.

No. C8–84–1504.

Court of Appeals of Minnesota.

April 9, 1985.

James T. Martin, Minneapolis, for appellant.

John B. Gordon, Minneapolis, for respondents.

Heard, considered and decided by HUSPENI, P.J., and FOLEY, Judge, and WOZNIAK, JJ.

## OPINION

FOLEY, Judge.

This is an action to obtain damages from Monarch Life Insurance Company and its agent, William Helms, for alleged misrepresentations concerning the rate of return of an annuity. At the close of the plaintiff's case, the trial court directed a verdict in favor of Monarch and Helms on several grounds. We affirm.

## FACTS

In the 1960's, Harold Conrad was the owner of four small companies. Conrad sought to establish a pension plan for his office employees.

William Helms was an agent for the Monarch Life Insurance Company. Helms had sold Conrad's companies a health insurance program in 1962 and had subsequently assisted in filing medical insurance claims. In 1968, Helms visited Conrad, informing him that Monarch had a pension plan department. Shortly thereafter, Monarch submitted a detailed pension plan proposal to Conrad and Robert Blegen, an officer and director of each of Conrad's companies. In explaining the proposal, Helms purportedly represented that all monies contributed would immediately begin earning a minimum return of 5½%. Conrad and Blegen purchased the first Monarch plan in December 1968, making themselves trustees under the plan.

In actuality, the contract called for a first year load and premium payment to Monarch of 37%, a second year load of 11%,

and a guaranteed rate of return of only 2½%.

Policies for the first year were delivered to Blegen several months after purchase. Blegen did not read the policies, but instead promptly put them in a safe. Likewise, policies delivered in successive years were also not read and were similarly handled.

Two employees quit and cashed in their policies in 1971. One of those employees complained to Blegen that he did not receive the return he had expected. Blegen related this complaint to Helms but took no further action. Thereafter, Blegen complained to Helms twice a year, stating that the rate of return was not as high as had been promised. Conrad and Blegen filed suit in February 1979, more than seven years after the two employees had quit and more than ten years after the allegedly fraudulent statements were made.

## ISSUE

Had the statute of limitations run as a matter of law before suit was brought?

## ANALYSIS

At the close of plaintiff's evidence, the trial court directed a verdict in favor of the defendants. That decision was based on several grounds, only one of which need be discussed here.

### 1. *Directed Verdict Standard*

"[T]he court should direct a verdict in favor of a party in whose favor the evidence overwhelmingly preponderates, though there is some evidence in favor of the adverse party." *Nelson v. Henning*, 354 N.W.2d 35, 39 (Minn.Ct.App.1984) (quoting *Reiter v. Porter*, 216 Minn. 479, 483–84, 13 N.W.2d 372, 375 (1944)).

### 2. *Statute of Limitations*

"The applicable statute of limitation, section 541.05(6), provides that actions shall be commenced within six years '[f]or relief on the ground of fraud, in which case the cause of action shall not be deemed to have accrued until the discovery by the aggriev-

ed party of the facts constituting the fraud.' " *Bustad v. Bustad*, 263 Minn. 238, 116 N.W.2d 552, 555 (1962).

However:

The facts constituting the fraud are deemed to have been discovered when, with reasonable diligence they could and ought to have been discovered. The mere fact that the aggrieved party did not *actually* discover the fraud will not extend the statutory limitation if it appears that the failure to sooner discover it was the result of negligence, and inconsistent with reasonable diligence.

*First National Bank of Shakopee v. Strait*, 71 Minn. 69, 73 N.W. 645, 646 (1898), *Duxbury v. Boice*, 70 Minn. 113, 120, 72 N.W. 838 (Minn.1897) (emphasis supplied).

"[T]he burden is on the plaintiff to allege and prove that he did not discover the facts constituting the fraud until within six years before the commencement of the action." *Duxbury*, 72 N.W. at 839; *Humphrey v. Carpenter*, 39 Minn. 115, 39 N.W. 67 (1888); *Morrill v. Manufacturing Company*, 53 Minn. 371, 55 N.W. 547 (1893).

*Stark v. Equitable Life Assurance Society of United States*, 205 Minn. 138, 285 N.W. 466 (1939), quotes with approval Mr. Justice Mitchell, speaking for the court in the leading case of *Duxbury:*

* * * that the means of discovery are equivalent to actual discovery, and that a party must be deemed to have discovered the fraud when, in the exercise of proper diligence, he could and ought to have discovered it.

*Stark*, at 148, 285 N.W. at 471.

Appellants have wholly failed to introduce evidence which might cause reasonable minds to differ. After the two employees quit in 1971, Blegen, a trustee of the plan, received written information from Monarch regarding the rate of return being earned. The written information showed the rate of return to be far less than that allegedly promised by Helms. Further, appellants demonstrated actual knowledge of

the inadequate return through Blegen's semi-annual complaints to Helms.

For the trial court to direct a verdict did not require a finding of actual knowledge of the less-than-promised return. Appellants' cause of action is time-barred by the six year statute of limitations as a matter of law because appellants were put on notice of the less-than-promised return upon receipt of the Monarch materials in 1971. They did not take formal legal action until 1979; this is inconsistent with their duty of reasonable diligence and is an unmistakable portrait of negligence. Minn.Stat. § 541.05(6) bars any cause of action based on fraud as a matter of law. *Bustad,* 116 N.W.2d at 555.

Because the action is barred by the statute of limitation, we are not called upon to rule on the separate claim of misrepresentation.

### DECISION

The trial court did not err in granting respondents' motion for directed verdict. Evidence in the record supported the finding that the applicable statute of limitation barred appellants' cause of action as a matter of law.

Affirmed.