# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-3111

_____

In re: Michael John Hernandez

*Debtor*

------------------------------

Michael John Hernandez

*Appellant*

v.

General Mills Federal Credit Union

*Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: March 7, 2017
Filed: June 14, 2017

_____

Before BENTON, BEAM, and MURPHY, Circuit Judges.

_____

BEAM, Circuit Judge.

General Mills Federal Credit Union[1] filed an adversary proceeding to determine the dischargeability of a debt in Michael Hernandez's Chapter 7 bankruptcy. The bankruptcy court[2] found the debt excepted from discharge, the district court[3] affirmed, and we now affirm as well.

## I.   BACKGROUND

Hernandez's grandparents, Joseph and Stella Hernandez (whom we will refer to as Joseph and Stella), owned a home in St. Paul, Minnesota. In June 2003, Joseph and Stella executed a quitclaim deed transferring title to Hernandez with a reserved life estate. At that time the home was encumbered with a $144,000 mortgage. In October 2003, Hernandez, Joseph, and Stella executed a mortgage for $185,000, obtained from General Mills, which was used to pay off the earlier mortgage and some of Hernandez's personal debt. In April 2004, Hernandez obtained a home equity loan in his own name from General Mills for $30,000, which he used to consolidate his debt. In May 2004, the three took out another mortgage on the home for $222,300, again for consolidating debt. At closing, Hernandez signed the mortgage agreement both in his own name and as the attorney-in-fact for Joseph and Stella under powers of attorney (the 2004 POAs). The 2004 POAs were notarized by an Edward J. Thompson.

In March 2005, the three took out a home equity line of credit (the Loan), secured by a second mortgage subordinate to the May 2004 loan. The bank provided Hernandez new POA forms for Joseph and Stella which were completed and included

---

[1]General Mills Federal Credit Union is now Mill City Credit Union.

[2]The Honorable Michael E. Ridgway, United States Bankruptcy Judge for the District of Minnesota.

[3]The Honorable Susan Richard Nelson, United States District Judge for the District of Minnesota.

in the loan documents (the 2005 POAs). The 2005 POAs provided a space for a "specimen" signature of the attorney-in-fact, and these were left blank. The 2005 POAs were notarized by a Cheryl L. Engh. At closing, Hernandez, as he did with the 2004 loan, signed for himself and for his grandparents as their attorney. He also signed an affidavit stating he "is the Attorney-in-Fact (or agent) named in that certain Power of Attorney dated March 8, 2005." "March 8, 2005" was typed into a blank space. Within a short time and over several transactions, Hernandez drew on the line of credit nearly to its limit of $100,000.

In 2007, Joseph and Stella sought the assistance of their niece, Vicki Giller, in dealing with foreclosure notices they received due to defaulted payments on the $30,000 loan. In the course of researching loan documents Giller discovered what she believed to be forged signatures. She testified that the principal signatures on the 2005 POAs were not those of Joseph and Stella, which signatures she was familiar with from having helped her aunt and uncle with bills and other matters. Giller also gave hearsay testimony that Joseph and Stella told her in 2007 that they had not signed either the 2004 or 2005 POAs. Further, she testified that her aunt and uncle no longer drive and that their practice was to walk across the street from their home in Ramsay County to the Cathedral of St. Paul when they needed a notary. The 2004 and 2005 POAs, however, were notarized in Anoka and Hennepin Counties, respectively. Suspecting Hernandez had taken advantage of Joseph and Stella by committing fraud, Giller filed a police report and sought the assistance of Adult Protective Services. In August 2008, Stella signed an affidavit revoking "any and all Power(s) of Attorney Never given to Michael Hernadez, specifically the documents on 5/24/2004 & 3/8/2005."

In March 2009, Joseph and Stella filed a complaint in Ramsay County District Court against Hernandez, General Mills, and another party alleging various acts of fraud. The complaint alleged in part that neither Joseph nor Stella had signed the

2004 or 2005 POAs, that the signatures appearing on those forms are not those of Joseph and Stella, and that Hernandez falsely represented that he had the authority to sign the loan documents for his grandparents. General Mills in its answer stated that it was "without sufficient knowledge or information to form a belief as to the truth or falsity" of those allegations and denied them on that basis. Further, General Mills made a cross-claim against Hernandez for indemnity or contribution should General Mills be ordered to release or rescind the mortgages or to pay damages. In June 2010, the court dismissed the case due to Joseph and Stella's failure to engage in mediation, attend the pretrial conference, and to otherwise comply with the Minnesota Rules of Civil Procedure. The order dismissed Joseph and Stella's claims with prejudice, but it also stated, "Nothing herein shall be construed to affect, modify or prevent any of the Defendants from enforcement of any rights or remedies they may possess with respect to any liens, interest, mortgage, promissory note or otherwise with respect to the relationships between them and/or any interest in the property at issue in this case." An August 2010 stipulation dismissed all claims between the codefendants without prejudice.

A summary of these events, along with quotations from Stella and Giller, appeared in an October 2011 edition of the St. Paul Pioneer Press newspaper. Much of this account was disputed by testimony from Regina Griffith, Joseph and Stella's granddaughter and Hernandez's sister. At the time of the adversary proceeding in 2015, Joseph was deceased and Stella was living near Griffith in a nursing home in Ohio. Griffith's testimony painted Giller as the antagonist. Giller had been given power of attorney for Stella in 2013. Stella, apparently unhappy with Giller, revoked her power of attorney and gave it instead to Griffith. Griffith disputed much of the content of the St. Paul Pioneer Press article, and she stated that Giller had stolen jewelry from Stella. In addition, Griffith presented hearsay testimony that Stella told her Hernandez had not forged her and her husband's signatures.

Hernandez lost his job in February 2009 and defaulted on the Loan that April. General Mills charged off the Loan in May 2014. In March 2014, Hernandez filed for Chapter 7 bankruptcy. General Mills filed an adversary proceeding in May to determine the dischargeability of the debt from the Loan, arguing it should be excepted from discharge for fraud under 11 U.S.C. § 523(a)(2)(A). The bankruptcy court rejected Hernandez's res judicata, statute of limitations, and other defenses. In determining whether Hernandez's debt was dischargeable for fraud, the bankruptcy court placed great weight on the testimony of Cheryl Engh, the purported notary on the 2005 POAs. She testified that she does not generally notarize documents, that the signature on the 2005 POAs were not hers, and that she did not know the Hernandezes or recall notarizing the 2005 POAs. The bankruptcy court admitted in evidence the conflicting hearsay testimony of Giller and Griffith under Federal Rule of Evidence 807's residual hearsay exception, and it admitted the newspaper article over Hernandez's counsel's hearsay objection. The bankruptcy court also admitted in evidence Exhibit 2, a copy of the Loan agreement, which had been substituted for Exhibit BB, an earlier, incomplete version of the Loan agreement. Exhibit 2 was a complete version of the agreement that contained Hernandez's signature on his own behalf, his signature on behalf of Joseph and Stella, and his initials. Exhibit BB contained only Hernandez's signature on his own behalf. When Hernandez attempted to introduce Exhibit BB at trial, the bankruptcy court sustained General Mills' objection for lack of foundation, disclosure, and relevance.

The bankruptcy court found by a preponderance of the evidence that General Mills had met the elements necessary under § 523(a)(2)(A) to except the Loan from discharge. Its conclusion was bolstered by the negative inference it drew from Hernandez's invocation of his right not to incriminate himself under the Fifth Amendment. This occurred when Hernandez was questioned about the fact that Edward Thompson, who purportedly notarized the 2004 POAs, was also the name Hernandez provided as that of a tenant in one of his rental properties in the 2004 loan

application. When asked whether he had provided false information on the 2004 loan application, Hernandez invoked the Fifth Amendment. Based on its findings and the negative inference, the bankruptcy court excepted from discharge the debt from the Loan, totaling $122,115.25 plus an annual interest rate of four percent. The district court, with appellate jurisdiction under 28 U.S.C. § 158(a), affirmed, and Hernandez now appeals.

## II. DISCUSSION

Hernandez argues the bankruptcy court erred in rejecting his res judicata and statute of limitations defenses, in making certain evidentiary rulings, and in finding his debt nondischargeable under 11 U.S.C. § 523(a)(2)(A). As a general matter, we review the decision of a bankruptcy court to deny discharge with the same standard of review applied by the district court below, reviewing the bankruptcy court's factual findings for clear error and its conclusions of law de novo. Waugh v. Eldridge (*In re Waugh*), 95 F.3d 706, 710 (8th Cir. 1996). Our review is independent of the district court's, although we may afford its decision persuasive weight. Id.

### A. Res Judicata

Hernandez argues the Ramsay County District Court's dismissal of Joseph and Stella's fraud claims with prejudice, and the later stipulation dismissing claims between codefendants without prejudice, precluded relitigation of the fraud issue in the adversary proceeding. "[W]e review de novo the preclusive effects of a previous state-court judgment on this federal case." Knutson v. City of Fargo, 600 F.3d 992, 995 (8th Cir. 2010). The bankruptcy court found that the language in the state court's order reserving the parties' rights and remedies, and the dismissal of cross-claims without prejudice, prevented the state court judgment from having preclusive effect in the instant dispute. "The preclusive effect of a state court judgment in a subsequent

federal lawsuit generally is determined by the full faith and credit statute," which "directs a federal court to refer to the preclusion law of the State in which judgment was rendered." Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985) (citing 28 U.S.C. § 1738). Thus, our preclusion analysis is guided by Minnesota law.

Hernandez set forth the defenses of both claim and issue preclusion in his answer to General Mills' adversary complaint.[4] Claim preclusion under Minnesota law precludes the litigation of a claim "when litigation on a prior claim involved the same cause of action, there was a judgment on the merits, and the claim involved the same parties or their privies. In addition, the party against whom res judicata is applied must have had a full and fair opportunity to litigate the matter in the prior proceeding." Nelson v. Am. Family Ins. Grp., 651 N.W.2d 499, 511 (Minn. 2002) (citations omitted). The issue here is whether the cross-claim by General Mills against Hernandez for indemnity or contribution precluded future litigation on other claims that could have been raised at that time. We need not parse through each element. Because all claims between codefendants were dismissed without prejudice by stipulation, there was no final adjudication on the merits. Minnesota Rule of Civil Procedure 41.01(a)(2) allows for a plaintiff to voluntarily dismiss claims "by filing a stipulation of dismissal signed by all parties who have appeared in the action." Rule 41.03 makes this provision applicable to cross-claims, and presumably "all parties" in that context would refer to all potential cross-claimants. The stipulation filed here was signed by all defendants and dismissed their interapplicable claims without prejudice. As to whether a dismissal without prejudice under this rule operates as a final adjudication on the merits, Rule 41.01(a) states:

---

[4]Although the language of the bankruptcy and district courts' memoranda is ambiguous, we presume they used the term "res judicata" in its broad sense encompassing both claim and issue preclusion. See generally Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 77 n.1 (1984).

> Unless otherwise stated in the notice of dismissal or stipulation the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of the United States or of any state an action based on or including the same claim.

The final, clarifying clause specifying when a dismissal by notice operates as a final adjudication on the merits necessarily implies that, under Minnesota law, a dismissal without prejudice by stipulation is not a final judgment. Hernandez has not pointed us to any contrary authority. Therefore we affirm the bankruptcy court's rejection of Hernandez's claim preclusion defense.

> Issue preclusion operates in Minnesota to preclude relitigation of an issue if

> 1) the issue [is] identical to one in a prior adjudication; 2) there was a final judgment on the merits; 3) the estopped party was a party or was in privity with a party to the prior adjudication; and 4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

Care Inst., Inc.-Roseville v. Cty. of Ramsey, 612 N.W.2d 443, 448 (Minn. 2000). The question here is whether the issue of Hernandez's having committed fraud was litigated by him vis-à-vis his grandparents, thus precluding its being relitigated between him and General Mills. Again, there was no final judgment on the merits. While it is true the fraud claims were dismissed with prejudice for failure to prosecute, such a dismissal operates as an adjudication upon the merits in Minnesota "[u]nless the court specifies otherwise in its order." Minn. R. Civ. P. 41.02(c). Here, the state court's order specifies otherwise, expressly stating that it does not affect the defendants' rights and remedies "with respect to any liens, interest, mortgage, promissory note or otherwise with respect to the relationships between them and/or any interest in the property at issue in this case." Because General Mills' adversary claim arises from its rights and remedies with respect to Hernandez's execution of a

promissory note secured by the property at issue–Joseph and Stella's home–we conclude there was no final adjudication of that issue and affirm the bankruptcy court as to issue preclusion as well.[5]

Hernandez also appears to argue that General Mills should be judicially estopped from alleging the invalidity of the POAs because in the state court action it denied the allegation that the signatures on the POAs were not those of Joseph and Stella. But the doctrine of judicial estoppel, which incidentally has not been adopted by Minnesota courts, Ryan Contracting Co. v. O'Neill & Murphy, LLP, 883 N.W.2d 236, 248-49 (Minn. 2016), applies where the estopped party has taken contrary positions, Stallings v. Hussmann Corp., 447 F.3d 1041, 1047 (8th Cir. 2006). There is nothing inconsistent in General Mills first declaring it is without sufficient knowledge of the truth or falsity of the fraud allegation and denying it on that basis and then alleging in a later action that it now believes fraud to have been committed. We therefore reject this argument as well.

---

[5]It is no answer to argue, as Hernandez does, that the dismissal with prejudice of the fraud claims should preclude later litigation because that is the remedy General Mills sought in its answer in the state action. That remedy was not a final judgment on the merits.

Hernandez also points to the stipulation, which stated that after dismissal of the cross-claims without prejudice, "there are no longer any pending claims in this matter and the case may be closed." He argues that this language demonstrates that the fraud claim had been "resolved." If by "resolved" Hernandez means adjudged on the merits, the stipulation demonstrates no such thing.

## B.    Statute of Limitations

Hernandez next argues that General Mills' fraud claims are barred by the statute of limitations.  Minnesota Statutes § 541.05 provides that "the following actions shall be commenced within six years: . . . (6) for relief on the ground of fraud, in which case the cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud."  Although General Mills' 2014 adversary complaint was filed nine years after the alleged 2005 fraud, the bankruptcy court concluded that General Mills did not discover the cause of action until Joseph and Stella's lawsuit in 2009.  That occurred five years before General Mills filed its adversary complaint and therefore within § 541.05's six-year limitations period.

Hernandez first argues that the testimony of a bank employee, Harry Charles Ross III, did not establish when the bank became aware of the possibility of fraud.  He points to Ross's testimony that Ross only reviewed the 2005 loan documents a short time before testifying in 2015 and that he was not present at closing.  Hernandez argues this shows a lack of foundation for Ross's testimony that the bank only became aware of the fraud in 2009.  Although this argument might have force if Ross purported to testify as to the events at closing based on his personal observation, it does not address Ross's undisputed familiarity with General Mills' practices and procedures as they relate to record keeping and its reliance upon representations in making loan agreements.  That Ross's testimony that the bank relied on Hernandez's affidavit was based on his knowledge of General Mills' general practices rather than his personal observation of the closing may go to the weight the evidence is due, but it does not render the testimony irrelevant.  See Fed. R. Evid. 401 (setting forth test for relevant evidence). This point also responds to Hernandez's argument that General Mills failed to meet its burden of showing that it filed its action within the limitations period.  In light of the fact that Hernandez has not pointed to any countervailing evidence, the bankruptcy court did not clearly err in finding that Ross's testimony

-10-

established that the bank did not investigate the authenticity of the 2005 POAs at the time of closing and did not have reason to do so until the 2009 lawsuit.

Hernandez also argues that the discovery rule for fraud in Minnesota, as a matter of law, contains a requirement that a party exercise reasonable diligence. As stated by the Minnesota Supreme Court:

> [T]he facts constituting the fraud are deemed to have been discovered when, with reasonable diligence, they could and ought to have been discovered. The mere fact that the aggrieved party did not actually discover the fraud will not extend the statutory limitation, if it appears that the failure sooner to discover it was the result of negligence, and inconsistent with reasonable diligence.

Bustad v. Bustad, 116 N.W.2d 552, 555 (Minn. 1962) (quoting First Nat'l Bank of Shakopee v. Strait, 73 N.W. 645, 646 (Minn. 1898)). But these and other cases cited by Hernandez deal with instances where the plaintiff possessed information putting him on notice of fraud. Strait concerned a bank note that the plaintiff bank alleged had been fraudulently marked as paid, even though the note had been listed in the bank's accounts receivable more than six years before the suit. 73 N.W. at 646. Bustad concerned a claim that the defendant had fraudulently represented that payment was forthcoming, but the defendant had more than six years earlier refused to sign a waiver of the limitations period for a claim on the payment. 116 N.W.2d at 554. In Blegen v. Monarch Life Insurance Co., 365 N.W.2d 356, 357-58 (Minn. Ct. App. 1985), the plaintiff was informed seven years prior to the action that the terms of his company's pension plan were other than what an agent for the pension company had represented to him, and in Buller v. A.O. Smith Harvestore Products, Inc., 518 N.W.2d 537, 542 (Minn. 1994), a farmer observed spoiled feed in a silo more than six years prior to his claim against the silo dealer for fraudulent representations about the silo's ability to prevent spoilage. As the court noted in Buller, "A plaintiff must

-11-

exercise reasonable diligence when he or she has *notice of a possible cause of action for fraud*." Id. (emphasis added). Here, Hernandez has not identified any evidence in the record that General Mills should have been on notice that Hernandez was possibly committing fraud at the time of the 2005 loan. In the absence of such evidence, the limitations period did not accrue until such notice was presented in the 2009 complaint. We therefore affirm the bankruptcy court's rejection of Hernandez's statute of limitations defense.

## C.    Evidentiary Rulings

Hernandez challenges the bankruptcy court's admission into evidence of Giller's and Griffith's hearsay testimony and the St. Paul Pioneer Press article, and its exclusion of Exhibit BB. We review evidentiary rulings for an abuse of discretion that is both clear and prejudicial, affecting a substantial right of the objecting party. Weems v. Tyson Foods, Inc., 665 F.3d 958, 964 (8th Cir. 2011). The bankruptcy court admitted the hearsay testimony of Giller–that Joseph and Stella told her that they did not sign the 2004 or 2005 POAs–and of Griffith–that Stella told her Hernandez did not forge her and Joseph's signatures–under Federal Rule of Evidence 807's residual hearsay exception. It also admitted into evidence the St. Paul Pioneer Press article over Hernandez's counsel's vigorous hearsay objection. The bankruptcy court excluded Exhibit BB, the incomplete version of the Loan agreement, because Ross could not confirm its authenticity, because it was not listed on the final exhibit list, and because it was not relevant.

While we harbor doubts about the propriety of the bankruptcy court's hearsay rulings, we fail to see any prejudice Hernandez suffered as a result of them. The bankruptcy court discredited Giller's testimony to some extent and admitted Griffith's hearsay testimony contradicting Giller's. More fundamentally, the portion of the bankruptcy court's ruling in which it set out its findings and the evidence supporting

those findings makes no mention of the hearsay statements of Joseph and Stella. Given the other evidence in the case supporting its findings and its absence of mention of the hearsay statements, we conclude that the bankruptcy court did not rely on that evidence and so its admission did not prejudice Hernandez. As to the exclusion of Exhibit BB, we too fail to see the relevance of the evidence and affirm the bankruptcy court.

### D.    Dischargeability Under § 523(a)(2)(A)

Having dispensed with Hernandez's other arguments, we turn to the central issue of the dischargeability of his debt. Section 523(a)(2)(A) of the bankruptcy code excepts from discharge a debt for "an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud." Id. For a creditor to prevail under this exception, it must carry its burden of proving, by a preponderance of the evidence, Grogan v. Garner, 498 U.S. 279 (1991), that a debtor (1) made a representation, (2) with knowledge of its falsity, (3) deliberately for the purpose of deceiving the creditor, (4) who justifiably relied on the representation, and which (5) proximately caused the creditor damage. Heide v. Juve (*In re* Juve), 761 F.3d 847, 851 (8th Cir. 2014).[6] Exceptions to discharge are to be construed narrowly. Reshetar Sys., Inc. v. Thompson (*In re* Thompson), 686 F.3d 940, 944 (8th Cir. 2012). "Whether a requisite element of a claim under § 523(a)(2)(A) has been satisfied is a factual determination, which we review for clear error. A finding is clearly erroneous if, after reviewing the entire evidence, we are 'left with the definite and firm

---

[6]Because General Mills' adversary complaint alleges a knowing misrepresentation by Hernandez, and because we affirm the bankruptcy court under our standard § 523(a)(2)(A) elements, we do not have occasion to visit, and leave open, the question of whether those elements should be broadened under the Supreme Court's recent opinion in Husky International Electronics, Inc. v. Ritz, 136 S. Ct. 1581 (2016) (holding "actual fraud" in § 523(a)(2)(A) includes forms of fraud effected without false representation).

conviction that a mistake has been committed.'" R & R Ready Mix v. Freier (*In re Freier*), 604 F.3d 583, 587 (8th Cir. 2010) (citation omitted) (quoting Anderson v. Bessemer City, 470 U.S. 564, 573 (1985)). The only elements Hernandez offers meaningful argumentation on are the second, third, and fourth.

### 1. Knowledge of the Falsity of the Representation

Hernandez argues that his representation in the 2005 affidavit that he was the attorney-in-fact for Joseph and Stella was not false. He argues that when he signed the affidavit, its reference to the POAs signed on "March 8, 2005" was not present and there was only a blank space. He argues that "March 8, 2005" was filled in later by General Mills and that it was General Mills' practice to have the borrower sign a blank form to be filled in later. Furthermore, Hernandez argues, the 2004 POAs were still valid at that time–they were not revoked until 2008–and so his representation that he was attorney-in-fact for his grandparents was a true representation.

The problem with this argument is that Hernandez's factual assertion that the form was blank, as well as his assertion that General Mills' practice was to have borrowers sign blank documents, is based entirely on his own, uncorroborated testimony. The bankruptcy court stated that based on its observation of the witnesses' demeanor, tenor, and answers, it found Hernandez's testimony "just didn't quite ring true," in part because it was Hernandez himself that benefitted from the $100,000 in proceeds from the Loan. The trier's "credibility determinations are virtually unreviewable on appeal." Story v. Norwood, 659 F.3d 680, 685 (8th Cir. 2011). Further, there was sufficient evidence to permit the bankruptcy court's finding. In a 2008 written instrument, Stella revoked the authority "Never given" in the 2004 and 2005 POAs; Giller testified based on her personal knowledge that the signatures were not those of Joseph and Stella and that it was not characteristic of them to travel outside of their county for a notary; and Engh, a witness with no interest in the

-14-

proceedings, completely discredited the notarization on the 2005 POAs. We think the bankruptcy court was well within its discretion to find that Hernandez knowingly made a false representation that under the 2005 POAs he was the attorney-in-fact for Joseph and Stella.

### 2. Intent to Deceive

Hernandez next argues that in order to prove intent General Mills must have proven that Hernandez did not intend to perform his obligation to pay back the Loan. Hernandez points out that he was current on his payments until he lost his job, and that this shows he intended to pay the money back. We reject the premise of this argument. The plain language of § 523(a)(2)(A) makes clear that Hernandez need only have intended that the representation deceive the creditor, and that by this deceit he "obtained" credit. 11 U.S.C. § 523(a)(2)(A). A borrower who fraudulently obtains credit is not taken out of that provision simply because she intends to repay the loan. See The Merchs. Nat'l Bank of Winona v. Moen (*In re* Moen), 238 B.R. 785, 791 (B.A.P. 8th Cir. 1999) ("All [the intent element] requires is a showing of an intent to induce the creditor to rely and act on the misrepresentations in question." (quoting Moodie-Yannotti v. Swan (*In re* Swan), 156 B.R. 618, 623 n.6 (Bankr. D. Minn. 1993))). The precedent Hernandez cites shows only that making a promise without the intent to perform is sufficient to show the intent to engage in fraud, not that it is necessary. Freier, 604 F.3d at 588. Hernandez used his representation to satisfy General Mills of his authority and he used that purported authority to sign a loan agreement. See Caspers v. Van Horne (*In re* Van Horne), 823 F.2d 1285, 1287 (8th Cir. 1987) ("[T]he creditor may present evidence of the surrounding circumstances from which intent may be inferred."), abrogated by Grogan, 498 U.S. 279. Having found that Hernandez knowingly made the false representation to General Mills that he was the attorney-in-fact for Joseph and Stella under the 2005 POAs, the bankruptcy

court did not clearly err in further finding that by this representation Hernandez intended to deceive General Mills so as to obtain credit.

### 3. Justifiable Reliance

Finally, Hernandez argues that General Mills did not, in fact, rely on the 2005 POAs in deciding to extend credit to him, and that even if it did such reliance was not justifiable. First, he points to testimony by Ross that General Mills' practice is to require a borrower to sign documents upon which it relies, and he highlights the absence of his specimen signature on the 2005 POAs. Although Hernandez acknowledges that Minnesota law did not require the signature of an attorney-in-fact on a POA form in 2005, he emphasizes that General Mills' policy, and general business practice, is to require a signature. Hernandez also observes that he was not required to provide a POA for the $30,000 loan. He reasons that both the $30,000 loan and the 2005 Loan were second mortgages and concludes that General Mills did not generally require POAs for second mortgages. Therefore, he argues, General Mills did not even require a POA to be executed, and if it did the absence of Hernandez's signature was a "red flag" rendering its reliance unjustifiable.

Importantly, justifiable reliance is a different standard than reasonable reliance. Field v. Mans, 516 U.S. 59 (1995). "Justification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases." Id. at 71 (quoting Restatement (Second) of Torts § 545A cmt.B). Thus, a victim of fraud is not justified in relying on a representation, and a duty to investigate arises, where "the facts should be apparent to one of his knowledge and intelligence from a cursory glance, or he has discovered something which should serve as a warning that he is being deceived." Id. (quoting William Prosser, Law of Torts § 108 (4th ed. 1971)).

We conclude that the bankruptcy court did not clearly err in finding that General Mills' reliance on Hernandez's representation was justifiable. Although General Mills may have, as a general practice, sought a borrower's signature on loan documents upon which it relied, the absence of signatures on the 2005 POAs was mitigated by Hernandez's signed affidavit. We see nothing apparent in the documents at issue or in any other record evidence indicating that a cursory glance would have put General Mills on notice of fraud, triggering a duty on their part to investigate. Further, the fact that a POA was not required for the $30,000 loan is not surprising as that loan was taken out in Hernandez's name alone, whereas the bank required the 2005 Loan to be taken out in the names of Hernandez and his grandparents.

## 4. Whether the Debt was Dischargeable

In sum, upon our review of the record as a whole, we see no clear error in the finding that the debt was excepted from discharge under § 523(a)(2)(A). As indicated above we find no error raised by Hernandez in the bankruptcy court's finding that the elements of § 523(a)(2)(A) were met, and Hernandez has not challenged the bankruptcy court's drawing of a negative inference from his invocation of the Fifth Amendment right against self-incrimination. See Baxter v. Palmigiano, 425 U.S. 308, 317-18 (1976) (permitting silence to be used against inmate in noncriminal disciplinary hearing, but not as sole basis for determination of guilt); Rosebud Sioux Tribe v. A & P Steel, Inc., 733 F.2d 509, 521 (8th Cir. 1984) ("[T]he Supreme Court has held that the Fifth Amendment does not preclude an adverse inference when the privilege is claimed by a party to a civil case."). We therefore affirm the bankruptcy court's finding that Hernandez's debt was not dischargeable.[7]

_____

[7]We do not rely on the portions of the district court's order contested by Hernandez, particularly its finding that the 2004 POAs were also forgeries, and so do not address Hernandez's argument on that issue.

## III. CONCLUSION

For the foregoing reasons, we affirm.

_____