# United States Bankruptcy Appellate Panel

## For the Eighth Circuit

_____

No. 18-6027

_____

In re: Barbara A. Wigley

*Debtor*

------------------------------

Lariat Companies, Inc.

*Plaintiff - Appellee*

v.

Barbara A. Wigley

*Defendant - Appellant*

_____

Appeal from United States Bankruptcy Court
for the District of Minnesota - Minneapolis

_____

Submitted: August 7, 2020
Filed: September 25, 2020

_____

Before NAIL, SHODEEN, and DOW, Bankruptcy Judges.

_____

NAIL, Bankruptcy Judge.

Debtor Barbara A. Wigley ("Debtor") appeals the judgment of the bankruptcy court[1] excepting from discharge a debt owed to Lariat Companies, Inc. ("Lariat"). We have jurisdiction over this appeal pursuant to 28 U.S.C. § 158(b). We affirm.

## BACKGROUND

In an earlier appeal involving the same parties, we described in detail the more than a decade of litigation between and among Debtor, Debtor's spouse, and Lariat, all of which can be traced back to Debtor's spouse's personal guarantee of a lease of real property from Lariat. *See Lariat Companies, Inc. v. Wigley* (*In re Wigley*), 593 B.R. 327 (B.A.P. 8th Cir. 2018), *rev'd and rem'd*, 951 F.3d 967 (8th Cir. 2020). One piece of that litigation resulted in a state court judgment in Lariat's favor holding Debtor and Debtor's spouse jointly and severally liable for certain fraudulent transfers from Debtor's spouse to Debtor. When Debtor later filed a petition for relief under chapter 11, Lariat asserted a claim for $1,030,916.74 against Debtor based on this state court judgment, and Debtor objected to Lariat's claim. The bankruptcy court overruled Debtor's objection but found Lariat's claim was for damages resulting from the termination of a lease of real property (*i.e.*, the lease Debtor's spouse had personally guaranteed) and was thus subject to 11 U.S.C. § 502(b)(6)'s cap on such claims. The resulting appeal culminated in the Eighth Circuit Court of Appeals' determination that Lariat held a claim against Debtor for $308,805.00 (plus applicable interest). *Lariat Companies, Inc. v. Wigley* (*In re Wigley*), 951 F.3d 967, 971 (8th Cir. 2020).

While Debtor's objection to Lariat's claim was still pending before the bankruptcy court, Lariat filed a complaint to except its claim from discharge under

---

[1]The Honorable William J. Fisher, United States Bankruptcy Judge for the District of Minnesota.

11 U.S.C. § 523(a)(2)(A). The matter was tried, and the bankruptcy court issued detailed written findings of fact, rendered an equally detailed oral ruling, and entered a judgment excepting from discharge the debt owed to Lariat. Debtor timely appealed.[2]

## STANDARD OF REVIEW

We review *de novo* the bankruptcy court's conclusions of law. *Pierce v. Collection Assocs., Inc.* (*In re Pierce*), 779 F.3d 814, 817 (8th Cir. 2015). We review for clear error the bankruptcy court's findings of fact. *Islamov v. Ungar* (*In re Ungar*), 633 F.3d 675, 679 (8th Cir. 2011). A finding of fact is clearly erroneous if, after reviewing all the evidence, the appellate court is left with the definite and firm conviction that a mistake has been made. *R & R Ready Mix v. Freier* (*In re Freier*), 604 F.3d 583, 587 (8th Cir. 2010).

## DISCUSSION

With one exception not applicable in this case, a debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . actual fraud" is excepted from an individual debtor's discharge. 11 U.S.C. § 523(a)(2)(A). Traditionally,

> [f]or a creditor to prevail under this exception, it must carry its burden of proving, by a preponderance of the evidence, that a debtor (1) made a representation, (2) with knowledge of its falsity, (3) deliberately for the purpose of deceiving the

[2]Had the court of appeals held in the earlier appeal Lariat did not have a claim against Debtor, this appeal would have been rendered moot. Consequently, on Debtor's motion, and with Lariat's consent, we stayed this appeal until the earlier appeal was resolved.

creditor, (4) who justifiably relied on the representation, and which (5) proximately caused the creditor damage.

*Hernandez v. Gen. Mills Fed. Credit Union* (*In re Hernandez*), 860 F.3d 591, 602 (8th Cir. 2017) (citations omitted).  However, "[t]he term 'actual fraud' in § 523(a)(2)(A) encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation." *Husky Int'l Elec., Inc. v. Ritz*, ___ U.S. ___, 136 S. Ct. 1581, 1586 (2016).  Of particular significance to this case,

> the recipient of the transfer—who, with the requisite intent, also commits fraud—can obtain assets by his or her participation in the fraud.  If that recipient later files for bankruptcy, any debts traceable to the fraudulent conveyance will be nondischargeable under § 523(a)(2)(A).

*Id.* at 1589 (citations, brackets, and quotation marks omitted).[3]

The traditional elements of a claim under § 523(a)(2)(A) clearly do not apply to a claim arising out of a fraudulent transfer scheme, and the *Husky* court did not expressly identify the elements of such a claim.  From its reading of *Husky*, however, the bankruptcy court gleaned three such elements:  (1) the transferor transferred assets with the actual intent to hinder, delay, or defraud the transferor's creditors; (2) in receiving the assets, the transferee possessed actual fraudulent intent; and (3) as a result of these actions, the creditor was injured or suffered damages.  This is a reasonable interpretation of *Husky*, absent further guidance from the Supreme Court or the Eighth

---

[3]Debtor describes this portion of the Supreme Court's opinion as *dicta*.  We disagree.  However, even if Debtor is correct, not all *dicta* are created equal.  *Rucker v. Belew* (*In re Belew*), 588 B.R. 875, 878 (B.A.P. 8th Cir. 2018), *aff'd*, 943 F.3d 395 (8th Cir. 2019).  And we cannot ignore the Supreme Court's unambiguous statement of the law.  *Id.*

Circuit Court of Appeals.[4] *Cf. Bonnett v. Moirbia Scottsdale, LLC* (*In re Bonnett*), No. AZ-19-1293-BTL, 2020 WL 4371881, at *4 (B.A.P. 9th Cir. July 30, 2020) ("[T]o succeed on a claim against the debtor-recipient the creditor must prove: 1) the transferor conveyed the property with the intent to hinder or delay his creditors; and 2) the transferee was a participant in the fraud, such that it could be said that the debtor engaged in 'deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another.'").

In discerning Debtor's spouse's intent in transferring the assets to Debtor, the bankruptcy court considered the eleven "badges of fraud" set forth in MINN. STAT. §§ 513.41-513.51 (the Minnesota Uniform Fraudulent Transfer Act[5]):

(1) the transfer or obligation was to an insider;

(2) the debtor retained possession or control of the property transferred after the transfer;

(3) the transfer or obligation was disclosed or concealed;

(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) the transfer was of substantially all the debtor's assets;

(6) the debtor absconded;

(7) the debtor removed or concealed assets;

---

[4]In *Hernandez*, because the creditor alleged a knowing misrepresentation by the debtor, not actual fraud, the Eighth Circuit Court of Appeals applied the traditional elements of a § 523(a)(2)(A) claim and left open the question of whether those elements should be broadened in light of the then-recent opinion in *Husky*. *Hernandez*, 860 F.3d at 602.

[5]On August 1, 2015, after the date of the fraudulent transfers in this case, the name of the act was changed to the Minnesota Uniform Voidable Transactions Act, and many of its provisions were amended. 2015 Minn. Sess. Laws Serv. Ch. 17 (S.F. 1816) (West).

(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) the debtor transferred the essential assets of the business to a lienor that transferred the assets to an insider of the debtor.

MINN. STAT. § 513.44(b). The bankruptcy court was free to consider these and any other factors it deemed relevant. *Ritchie Cap. Mgmt., LLC v. Stoebner*, 779 F.3d 857, 863 (8th Cir. 2015).

The bankruptcy court identified and discussed at length the specific facts upon which it relied in considering these badges of fraud. It found seven of these badges (nos. (1), (2), (3), (4), (8), (9), and (10)) were present in this case. It also considered other factors, including Debtor's spouse's admitted desire to protect himself, his business, and his family, which the bankruptcy court said was as close to a direct admission as one gets in a fraudulent transfer case. And it considered and rejected any suggestion of a "legitimate supervening purpose" for the transfers. *See Kelly v. Armstrong*, 206 F.3d 794, 798 (8th Cir. 2000) (where there is a confluence of the badges of fraud, a presumption of fraudulent intent arises; to overcome this presumption, the debtor must show a legitimate supervening purpose for the transfers).

Based on these predicate findings, the bankruptcy court then found Debtor's spouse transferred the assets to Debtor with the actual intent to hinder, delay, or defraud his creditors. The bankruptcy court's findings regarding this element are supported by the record.

-6-

In discerning Debtor's intent in receiving the assets from her spouse, the bankruptcy court looked to the totality of the circumstances surrounding the transfers.

> Because direct proof of intent (*i.e.*, the debtor's state of mind) is nearly impossible to obtain, the creditor may present evidence of the surrounding circumstances from which intent may be inferred. When the creditor introduces circumstantial evidence proving the debtor's intent to deceive, the debtor cannot overcome that inference with an unsupported assertion of honest intent. The focus is, then, on whether the debtor's actions appear so inconsistent with his self-serving statement of intent that the proof leads the court to disbelieve the debtor.

*Caspers v. Van Horne* (*In re Van Horne*), 823 F.2d 1285, 1287-88 (8th Cir. 1987), *abrogated on other grounds by Grogan v. Garner*, 498 U.S. 279 (1991) (citations, brackets, and quotation marks omitted).

The bankruptcy court identified and discussed at length the specific facts upon which it relied in considering the totality of the circumstances. It found Debtor was aware of the lawsuit (commenced by Lariat) against her spouse that precipitated the litigation between and among Lariat, Debtor's spouse, and Debtor that followed over the ensuing years. It found Debtor was aware of the financial difficulties her spouse was encountering at the time the transfers were made. It found Debtor's explanation that the transfers were made for estate planning purposes was belied by her actions following the transfers. And it found Debtor's rationale for the transfer of one specific asset (a joint checking account) was not credible. Based on these predicate findings, the bankruptcy court then found Debtor acted with actual fraudulent intent when she received the assets from her spouse. The bankruptcy court's findings regarding this element are also supported by the record.

Finally, with respect to damages, the bankruptcy court found the state court fraudulent transfer judgment established both the damages Lariat suffered as a result of the fraudulent transfers and Debtor's liability to Lariat for those damages. We agree.[6]

Debtor attempts to paint a different picture of the events surrounding the fraudulent transfers. She distinguishes *Husky*, which unquestionably involved more egregious conduct on the debtor's part than shown in this case, but *Husky* does not suggest a debtor's conduct must rise (or sink) to the same level to implicate § 523(a)(2)(A). She points out the record does not contain extrinsic evidence of fraud, which is not and has never been an element of a claim under § 523(a)(2)(A). She takes exception to the bankruptcy court's finding that her spouse concealed the fraudulent transfers, a finding that was supported by the record but could be disregarded and still leave six other badges of fraud to support the bankruptcy court's finding that Debtor's spouse transferred the assets to Debtor with the actual intent to hinder, delay, or defraud his creditors. She baldly states her "rehabilitative conduct" (*i.e.*, the payments

---

[6]At the same time, we admit to some confusion regarding what, if anything, Debtor still owes Lariat. Through his chapter 11 plan, Debtor's spouse has paid Lariat the full amount of its allowed claim against him (which was capped by § 502(b)(6)), and through her chapter 11 plan, Debtor has paid Lariat the full amount of its allowed claim against her (which was also capped by § 502(b)(6)). The bankruptcy court cited *McAlpin v. Educ. Credit Mgmt. Corp.* (*In re McAlpin*), 254 B.R. 449 (Bankr. D. Minn. 2000), *rev'd on other grounds*, 263 B.R. 881 (B.A.P. 8th Cir. 2001), for the proposition that if a creditor's claim is disallowed in whole or in part based on bankruptcy principles (*e.g.*, § 502(b)(6)), not on the merits, and the creditor's claim is not discharged, then the creditor is not barred from collecting the disallowed amount of its claim outside of bankruptcy. Debtor seems to dispute this, but if Debtor is correct and Lariat is barred from collecting the disallowed portion of its claim (*i.e.*, the remaining balance of the state court fraudulent transfer judgment), then this appeal is moot. However, neither party suggests this appeal is moot, and the record does not afford us a sufficient basis to make such a determination on our own.

she made to certain of her spouse's creditors, but not to Lariat) absolves her from any nondischargeable liability for actual fraud, without citing any authority for such a bright-line test in the context of § 523(a)(2)(A) and without providing any justification for elevating that single factor above the other surrounding circumstances from which fraudulent intent might be inferred. She argues what she describes as her preservation of the assets for payment to other creditors mandates reversal because in Debtor's mind it outweighs every other circumstance cited by the bankruptcy court in finding actual fraud, which suffers from the same infirmities as Debtor's argument regarding her "rehabilitative conduct." And she argues her conduct did not injure Lariat, which is patently untrue in light of the state court fraudulent transfer judgment.

The bankruptcy court viewed the evidence as demonstrating Debtor and her spouse participated in a fraudulent conveyance scheme brought within the scope of § 523(a)(2)(A) by *Husky*. The bankruptcy court's view is certainly permissible in light of the entire record. For that reason alone, even assuming *arguendo* a contrary view were also permissible,[7] we cannot say the bankruptcy court's findings of fact were clearly erroneous. *Anderson v. City of Bessemer City, North Carolina*, 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.").

---

[7]Throughout its oral ruling, the bankruptcy court questioned Debtor's credibility. Inasmuch as we must give due regard to the bankruptcy court's opportunity to judge witnesses' credibility, Fed.R.Civ.P. 52(a)(6) (incorporated by reference in Fed.R.Bankr.P. 7052), a contrary view of the evidence may not be permissible. It would be difficult–if not impossible–to accept such a contrary view without giving credence to Debtor's version of events.

CONCLUSION

For the reasons stated, we affirm the bankruptcy court's judgment excepting from discharge the debt owed to Lariat.[8]

---

[8]The bankruptcy court devoted a substantial portion of its oral ruling to a discussion of the collateral estoppel effect of the state court fraudulent transfer judgment. However, the bankruptcy court began its discussion by noting it did not need to do so, because its own findings–which neither party suggests were barred by collateral estoppel–supported its conclusion that the debt owed to Lariat should be excepted from discharge. We agree.